## Commonwealth v. Penn Central Containers, Inc.

*Williamson & Cupp* and *Metzger, Wickersham & Knauss,* for appellant.

*David C. Harrison,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for industrial board.

SOHN, J., July 21, 1958.—This case comes before us as an appeal from the adjudication of the Industrial Board of the Department of Labor and Industry of the Commonwealth of Pennsylvania entered March 27, 1958, wherein the industrial board refused to issue to Penn Central Containers, Inc., a corporation organized

and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, and having its chief office and principal place of business in the Township of Old Lycoming, County of Lycoming, a permit to operate an unfired pressure vessel which is a part of a corrugating machine owned by said Penn Central Containers, Inc.

On January 29, 1957, appellant purchased, through a broker in the City of New York, a Langston corrugating machine, which was a used machine manufactured in 1928 by Samuel M. Langston Company, of Camden, N. J. The machine at the time of purchase was in operation and use in a corrugated fiber board shipping container plant of Andrew Ritchie Company of Scotland. Appellant paid out and expended for this machine the sum of $45,000. The machine was shipped from Scotland and received in America by appellant on July 1, 1957, when appellant commenced to install it. Because of the fact that the machine is so huge in size, appellant was compelled to build a new and substantial addition to its plant, for which it expended a sum in excess of $55,000. This corrugating machine contains as part of its unit, unfired pressure vessels of a pressure capacity greater than 15 pounds per square inch. Appellant was engaged in installing this machine for some time after July 1, 1957, and in doing so was compelled to hire an expert and to purchase additional parts and to pay for labor, all of which cost appellant an additional sum of $10,000. When appellant had completed approximately 70 percent of the installation, it received a letter from Blaine M. Book, Chief of the Division of Boilers of the Department of Labor and Industry, dated September 4, 1957, which stated that appellant was refused a permit to operate said machine and would not be issued a permit unless it complied with section 4 of the Boiler Act of May 2, 1929, P. L. 1513, 35 PS §1304.

Since September 4, 1957, appellant has not been able to do anything further with the machine and it has remained idle, and under date of November 23, 1957, it petitioned the Industrial Board of the Department of Labor and Industry for a hearing on the question of the issuance of this permit, and on January 23, 1958, a hearing was held in Harrisburg before the board, at which time testimony was taken and transcribed and made a part of the record on which this appeal is based. Under date of March 27, 1958, the industrial board filed its adjudication and decision, in which it refused to issue a permit or certificate to appellant for the operation of the machine. This adjudication was filed pursuant to the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1. On April 7, 1958, appellant filed its appeal in the Court of Common Pleas of Dauphin County from the adjudication and decision of the industrial board.

There seems to be only one question in this case. It is whether this appellant is entitled to a permit, permitting it to use a corrugating machine of which a part is an unfired pressure vessel in its plant in Pennsylvania, when such machine was manufactured in the year 1928 by the Samuel M. Langston Company at Camden, N. J., and shipped to a plant in Scotland, and used in Scotland up until 1957, when appellant purchased said machine and brought it to its plant in Pennsylvania. The machine was manufactured either before or during the same year as the passage of the aforementioned Boiler Act and long prior to the 1937 amendment to that act. The section of the Boiler Act found in 35 PS §1304, which in itself is section 4 of the Boiler Act, is the provision under which the Department of Labor and Industry has refused appellant its permit. In fact, from the testimony it appears clearly that appellant was flatly turned down prior even to having an inspection by the Department.

The section of the act upon which the Department depends reads as follows:

"Every boiler destined for use in this Commonwealth, shall be inspected *during its construction,* by an inspector who shall have been commissioned by this Commonwealth to perform such service. Every such boiler which has been so inspected shall, upon completion, have placed upon it, in the presence of the said inspector, a stamp bearing a symbol and number authorized by the department for this purpose": Act of May 2, 1929, P. L. 1513, sec. 4. (Italics supplied.)

This section 4 was not affected by the 1937 amendment, which pertained and included an addition thereto concerning unfired pressure vessels bearing a pressure of more than 15 pounds per square inch. The original Act of May 2, 1929, P. L. 1513, contained absolutely no provision with respect to, nor did it in any way govern or affect unfired pressure vessels. The amendment of May 27, 1937, P. L. 912, 35 PS §1301, contains the following language:

"As used in this act, 'boiler' shall mean a vessel in which power or heat is generated, and including all piping and apparatus connected thereto, up to and including the stop-valve or valves nearest the boiler, and shall also be construed to include unfired pressure vessels carrying a pressure of more than fifteen pounds per square inch, except where the context clearly indicates otherwise."

It appears, therefore, that it would have been impossible to have an unfired pressure vessel, manufactured in the year 1928 and used outside the Commonwealth of Pennsylvania, inspected during its construction. Such a provision could not possibly be complied with in the case such as the one before us, and we are of the opinion that the Chief of the Boilers Division of the Department of Labor and Industry had no right to inform this appellant that its machine must be in-

spected *during construction* and that no permit could issue because such machine was not inspected during construction. The position taken herein by the department would result in an absurdity.

Under the terms and provisions of the aforementioned Boiler Act, the Department of Labor and Industry was given the power to promulgate proper regulations to carry the act into effect, and as of June 22, 1954, the department promulgated such regulations as are now in effect, and under section 2, "General Requirements", section (d), such regulations provide as follows:

"Pressure vessels installed within the jurisdiction of the Department of Labor and Industry shall conform to the requirements specified by said Department for Pennsylvania standard pressure vessels *except that pressure vessels within the confines of the State of Pennsylvania prior to September 1, 1937, may be continued,* in use or reinstalled under the following conditions:

1. Used pressure vessels—provided they are subjected to inspection by a commissioned boiler inspector and the maximum allowable working pressure is determined in accordance with the requirements of the department for used pressure vessels. If, in the opinion of the inspector, a hydrostatic pressure test is necessary and practical such a test shall be applied." (Italics supplied.)

Under these regulations the Department of Labor and Industry will issue permits and permit the use of unfired pressure vessels located within the limits. of the State of Pennsylvania prior to September 1, 1937, under the conditions hereinabove quoted, none of which relate in any way to the provisions in the Boiler Act making the requirements of inspection during construction necessary.

It has been the practice of the Department of Labor and Industry to issue permits for pressure vessels which were located within the limits of Pennsylvania before September 1, 1937, and to issue permits for their use without the requirement of any inspection during construction. This has been a proper practice, provided such vessels meet the general requirements for safety, because these vessels could never have been inspected during construction. In addition there is the fact that if such regulation did not permit this use, all owners of such vessels would have had their property confiscated.

It must, therefore, reasonably follow that if an unfired pressure vessel located within the limits of Pennsylvania is entitled to a permit, which necessarily entails that it was manufactured prior to 1937, an unfired pressure vessel located without the State of Pennsylvania and brought into it, should be entitled to the same permit, provided such pressure vessel was manufactured prior to the amendment of 1937, and at such time when there was no requirement in the Boiler Act for any inspection during construction of any unfired pressure vessel or any other requirements with respect to unfired pressure vessels.

It is urged upon us that action of the Commonwealth is repugnant to the equal protection clause of the Fourteenth Amendment to the Federal Constitution and also that it results in substance to a confiscation of appellant's property. Appellant has already expended $45,000 for the purchase of the vessel, and in addition has spent $55,000 for the erection of a building to house it and has also spent an additional sum of $10,000 to install the machinery.

We believe the decision of the Supreme Court of Pennsylvania in the case of Empire Box Corporation of Stroudsburg v. Chesnut, 352 Pa. 418, 43 A. 2d 88,

is controlling in this case. The facts are exactly similar to those in the Empire Box case and the similarity is admitted by the appellee in its brief. In the Empire Box case a permit was refused for unfired pressure vessels manufactured prior to 1937 and located outside the Commonwealth, but brought into plaintiff's plant in Pennsylvania after the passage of the 1937 amendment.

Former President Judge Rupp of this court, in his opinion which was affirmed per curiam by the Supreme Court, stated that the only question for determination was whether the provision with respect to inspection during construction was prospective or retroactive. He reviewed the language of the Boiler Act of 1929, as amended by the Act of 1937, in the light of section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552. Judge Rupp concluded his opinion, reported in 54 D. & C. 162, 166, as follows:

"Here, the object of the enactment is the protection of the public safety; the only basis for the Commonwealth's classification is the situs of the vessels on its effective date. We fail to see how the public safety could be affected by the geographical location of the vessels at that time. Or, to state it differently, we cannot discover why, as between divers vessels not inspected during construction, those within the Commonwealth on September 1, 1937, would be less dangerous than those without. If the latter were not distinguishable from the former in 1937, we can see no reason why, upon being successfully tested and registered, they would be distinguishable now. Hence, the Commonwealth's classification is unjustified and wholly arbitrary.

"It follows that, as construed and applied by the Commonwealth in this case, Section 4 would be repugnant to the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

"The presumption is against a legislative intent to pass such enactments—Section 52 of the Statutory Construction Act, supra, 46 PS §552—and we do not so construe or apply the section. Rather, we believe it to be prospective as to all unfired pressure vessels manufactured prior to the effective date of the amendatory act, irrespective of their whereabouts at that time, and hence constitutional.

"Accordingly, the fact that the vessels involved were not inspected during construction cannot be made the basis for their rejection."

In this case, as appears from the record, the Commonwealth's representatives were not even willing to have an inspection made of appellant's vessels, but took an adamant position that simply because they were not inspected during construction, even though it was in the years 1928 and 1929, they could not consider granting a permit.

The Commonwealth has taken the postion in its adjudication filed under the Adminstrative Agency Law that the Empire Box case was not binding upon it at the present time by reason of its present interpretation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution. It takes the position that the Empire Box case relied entirely on the violation of the Fourteenth Amendment to the Federal Constitution. However, this overlooks the fact that although Judge Rupp did mention the Fourteenth Amendment in his opinion, the real reason for his decision was that under the Statutory Construction Act the section of the Boiler Act then under consideration was prospective, not retroactive, and that the action of the Commonwealth at that time was arbitrary, capricious and unreasonable. We believe that we are still bound by that decision.

The Commonwealth has urged upon us the argument that because in the Empire Box case a constitu-

tional question was involved concerning the Federal Constitution, we may disregard the doctrine of "stare decisis." It says that because appellant had no knowledge of the 1937 amendment, and did not rely upon it, or on the Empire Box case, therefore we may disregard the latter decison. We cannot see how his knowledge or lack of knowledge has anything to do with the law in question here. Nor do we conclude that Judge Rupp's opinion turned upon the constitutional question, as we have already said. We have read with great interest the long, detailed and able brief of the Commonwealth, but our conclusion is that if the law is to be changed, the legislature had better do it. Too much theorizing is indulged in in the effort to convince us that we must fly in the face of Judge Rupp's and the Supreme Court's opinion.

There is one exhibit to which we wish to refer in this case. It is appellant's exhibit no. 4. This is a letter on the stationery of the Hartford Steam Boiler Inspection and Insurance Company of Hartford, Conn., addressed from the Philadelphia office, and is a report of an inspection of plaintiff's vessels, dated January 22, 1958. It is over the signature of C. W. Weidner, chief inspector. It indicates that appellant's vessels were inspected for placing insurance on January 21, 1958, at Winters Road, Williamport. It says:

"Corrugating Machine No. 1, State No. 224515

"9 Rolls

"Inspected externally while idle.

"Our inspection of the Rolls on this Corrugating Machine indicates that they would be acceptable for insurance coverage at a pressure not to exceed 150 lbs. per sq. in.

"However, in view of the fact that the Rolls are not stamped as required by the Pennsylvania Regulations for Unfired Pressure Vessels, they will not be accept-

able to the Department for an operating pressure in excess of 15 lbs. per sq. in.

Very truly yours,

C. W. Weidner,
Chief Inspector."

Here we have expressed the willingness of this insurance company to insure appellant's vessels at a pressure not to exceed 150 pounds per square inch. The testimony shows that appellant does not intend to exceed that pressure, although when in use in Scotland that pressure was exceeded.

The Act of May 2, 1929, P. L. 1513, sec. 5, 35 PS §1305, provides under the heading, "Examination of Inspectors and Fees Therefor":

"No person shall inspect boilers for the department unless he has passed a written examination prescribed by the department. Application for examination as an inspector of boilers shall be in writing, upon a form furnished by the department, and shall be accompanied by a fee of ten dollars. If the applicant is successful in passing the said examination, a certificate of competency and commission shall be issued upon the payment of an additional fee of five dollars. All inspectors shall be required to secure a new credential card each year, by application to the department, which application shall be accompanied be a fee of two dollars."

Section 6 of the same act, 35 PS §1306, under the heading, "Inspection of Insured Boilers" provides:

"If a boiler is insured by a company authorized to insure boilers in this Commonwealth against loss from explosion, *the inspection may be made by an employe of such company* . . ." (Italics supplied.)

In view of the fact that the certificate is in evidence over the signature of C. W. Weidner as Chief Inspector of the Hartford Steam Boiler Inspection and Insurance Company, we feel that we must take judicial notice of the fact that it is the practice in the Common-

wealth of Pennsylvania to allow boiler inspectors for these various insurance companies, who are licensed by the State, to make proper reports of their inspections to the Commonwealth of Pennsylvania. Although this particular evidence may not be controlling, we feel that it has considerable weight in the case and that the action of the Commonwealth herein has been most arbitrary.

Finding of fact no. 10 appearing in the adjudication is as follows:

"10. It will cost petitioner between $12,000.00 and $18,000.00 to replace non shop inspected elements in this machine with shop inspected elements.[1]

However, this finding of fact was not based upon any testimony introduced at the time of the hearing and we cannot consider it strictly as based upon evidence. In view of the fact that appellant has such a large sum of money invested in this project, although the Department has taken the flat stand that under no conditions will it grant permission to operate the vessels under the provisions of section 4 of the Act of 1929, we would like to suggest that it might be advisable for appellant, as well as the Commonwealth, to mutually consider whether or not they might reach an agreement, and that these machines might be put in such shape that Mr. Book would feel justified in passing them.

We now make the following

*Order*

And now, July 21, 1958, the appeal filed herein is sustained, and it is hereby ordered and decreed that

---

"[1] This finding is made on the basis of a letter from the Samuel M. Langston Company to Blaine M. Book, dated February 17, 1958. It indicates that the total cost for replacing all elements in this machine coming under the shop inspection requirements is $18,000.00. . . ."

250

Blaine M. Book, Chief of the Boilers Division of the Department of Labor and Industry, issue to petitioner a permit to operate and use the corrugating machine or unfired pressure vessel described in its petition.