## Dunbeker *v.* Duquesne Brewing Company (et al., Appellant).

Argued April 24, 1940.

Before **Keller**, P. J., **Cunningham**, **Baldrige**, **Stadtfeld**, **Parker**, **Rhodes** and **Hirt**, JJ.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellant.

*Ludvick Zupancic,* for appellee.

Opinion by Cunningham, J., July 19, 1940:

Claimant, on behalf of herself and three minor dependent children, sought compensation for the death of her husband, which she alleges resulted from an accident in the course of his employment with the defendant, Duquesne Brewing Company.

The referee made an award which was affirmed by the board; the court below entered judgment thereon and this appeal by the employer and its insurance carrier followed.

The question here involved is whether this record contains substantial competent evidence adequate to support findings that the decedent's death was caused by an "accident" sustained in the course of his employment.

About nine o'clock on the morning of November 29, 1937, George Dunbeker, the deceased, was sorting empty beer bottles in the yard of his employer's plant. The work consisted of picking empty bottles out of cases stacked about three feet high along-side deceased and putting them in other cases similarly placed. He had just set four bottles in a case. As he straightened up he fell over striking his head on the cement floor. He did not collapse or slip down but "fell full length". There was no visible or apparent cause for his fall. Dunbeker was immediately taken to the South Side Hospital where he regained consciousness about ten minutes after being admitted. An X-ray examination showed a fracture of the skull. After the first twenty-four hours he became irrational, developed delirium tremens, and died December 5, 1937.

Approximately six months previous to his fall at the company's plant, viz., on May 11, 1937, deceased had been the victim of a holdup, unconnected in any way with his employment, in the course of which he sustained injuries, consisting, inter alia, of a laceration of the scalp. Dr. Jones, deceased's family physician, who treated him at that time, testified, when called by claimant, that he found no fracture of the skull, but did not take an X-ray. In the opinion of this witness, deceased suffered no brain injury as a result of the holdup.

Dr. C. A. Duffy, a staff physician at the South Side Hospital, treated deceased upon his admission on November 29, 1937, and testified that, in his opinion, death "was due to delirium tremens, induced by a fractured skull."

Dr. T. M. Hemboldt, the coroner's physician, performed an autopsy. Testifying for claimant, he expressed the opinion that death was due to "shock and inter-cranial hemorrhage following fracture of skull and delirium tremens", and that the fractured skull was a contributing cause of death. The autopsy also

disclosed extensive adhesions between the cerebral hemispheres and the dura.

The witness was of opinion that the adhesions had resulted from the blows inflicted upon decedent's head at the time of the holdup, and that these adhesions would account for the subsequent fall, but would not have caused his death. While under examination by the referee, Dr. Hemboldt testified: "Q. By virtue of the fact that the skull and these adhesions were present, did the mere fact that they were present, and having a trauma super-imposed on that, enter into the picture as to the cause of the man's death, or can we divorce it entirely? A. I don't believe. I am sure that the man would not have died from the adhesions if he had not fractured his skull, but on the other hand, he had these adhesions, which we know cause definite things, and if we see no other demonstrable cause for him to fall, I don't see how we can divorce one from the other. I don't believe he would have died from the holdup. He might have had considerable difficulty. Q. Did the presence of the adhesions render the effects of the fracture more severe? A. No, I don't believe so; if so, it is certainly very remote. It might have interfered with drainage a little. I would not say it was a major factor. You see the brain is rather well protected. Q. This intra-cranial sub-dural hemorrhage, was that a direct result of the fractured skull? A. Yes. Q. And also a contributing cause of death? A. Yes."

Dr. J. N. Frederick, called by claimant and basing his conclusions upon a history of the case, agreed with Dr. Hemboldt that death was due to the fracture of the skull. This witness thought the brain adhesions were caused by excessive drinking of alcoholic liquors, and that the fall of November 29, 1937 was not due to the adhesions.

Dr. C. C. Wholey, the only physician called by defendant, expressed the opinion that chronic alcoholism and the blow on the head of May 11, 1937, combined to pro-

duce epilepsy, which caused the fall of November 29th, resulting in the fracture of the skull, delirium tremens and death.

On this evidence the referee found: "Taking all of the facts into consideration, the opinion of the various doctors and experts who appeared in this case, your referee believes and finds as a fact, that the [decedent] sustained injuries by accident when he fell in the course of his employment with the defendant, sustaining a fractured skull, followed by intra-cranial pressure [and] delirium tremens, subsequently causing his death on December 5, 1937."

As we read the medical testimony, we think it adequately sustains the conclusion that the direct contributing factor in decedent's death was the fracture of his skull sustained when he fell at the plant on November 29, 1937.

This case seems to us to be ruled by the opinion of our Supreme Court in *McCarthy v. General Electric Co.,* 293 Pa. 448, 452, 143 A. 116, followed by us in *Horn v. Fitler Co.,* 115 Pa. Superior Ct. 188, 192, 175 A. 440.

We see nothing in the facts of the present case to distinguish it from the McCarthy case, in which Mr. Justice WALLING said, (p. 451): "Furthermore, it is not necessary that the fall result from an accident, as the fall is the accident; nor is it material that the employee fell because he became dizzy or unconscious. An injury sustained by an accidental fall is compensable although the fall resulted from some disease with which the employee was afflicted."

Judgment affirmed.