530 A.2d 121

American Mutual Insurance Company, Petitioner *v.* Workmen's Compensation Appeal Board (Davenport and Natural Marble & Onyx Company), Respondents.

Natural Marble & Onyx Company, Petitioner *v.* Workmen's Compensation Appeal Board (Davenport and American Mutual Liability Insurance Company), Respondents.

346

Submitted on briefs February 24, 1987, to President Judge CRUMLISH, JR., Judge BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Charles W. Craven,* with him, *John S. Tucci,* and *Maria Zulick, Marshall, Dennehey, Warner, Coleman and Goggin,* for petitioner/respondent, American Mutual Insurance Company.

*William R. Hourican;* Of Counsel: *Frumkin & Manta,* for petitioner/respondent, Natural Marble & Onyx Company.

*Robert M. Abramson, Abrams, Abramson & Tabb,* for respondent, Geni Davenport.

OPINION BY SENIOR JUDGE BARBIERI, August 11, 1987:
Before this Court for review in this workmen's compensation case is the order of the Workmen's Compen-

sation Appeal Board (Board) affirming a referee's decision and order assessing workmen's compensation liability for benefits against American Mutual Insurance Company (Insurer) and Natural Marble & Onyx Company (Employer) in favor of Claimant, Geni Davenport, as widow of Robert Davenport, deceased employee (Decedent), including additional compensation payable with regard to two children of Robert and Geni Davenport. Separate appeals were taken by Insurer and Employer.[1] We will affirm.

Employer, an Illinois company performing marble work in Philadelphia and using its own Illinois employees, was required by a local union to add two local employees; Leslie Roberts, Jr. went to work on October 8, 1979, and Robert Davenport on October 9, 1979. At the end of the work day on October 9, 1979, Decedent then aged 34, suffered brain injuries in a fall which caused his death on October 10, 1979. Questions presented for answer by us include the following: (1) does Insurer's coverage of Employer under Illinois' law provide coverage in Pennsylvania for the two Pennsylvania employees, particularly Decedent; (2) is there substantial evidence to support the referee's finding that Decedent's death resulted from injury in the course of his employment; (3) is there substantial evidence to support the referee's finding and conclusion of law that Claimant was an eligible widow of Decedent; (4) was the wage rate computed as Decedent's average weekly wage for compensation purposes correctly determined.

---

[1] American Mutual Insurance Company entered its appearance to defend without reservation, but later sought to withdraw as insurer. Employer then retained separate counsel and presented its own defense, now contending that Insurer has waived the coverage defense or is estopped to deny coverage for having unreservedly entered its appearance to defend against the Claim Petition. Exhibits D-9 and D-10; N.T. 5/15/80 at pp. 36-38.

We will address these questions in the order in which they are stated.

## COVERAGE

Insurer contends that Illinois law governs as to coverage, while the Employer in its separate brief maintains that Pennsylvania law should control. We conclude that American Mutual is responsible to pay benefits as awarded by the referee and affirmed by the Board[2] and we agree that this result was properly reached under Illinois law. We note in passing, however, that the Illinois Insurer here may also be liable for workmen's compensation benefits under Pennsylvania law.[3]

---

[2] The compensation authorities have "jurisdiction" to determine policy coverage questions, reviewable by the Court. *See Ertz v. Glen Nan, Inc.,* 29 Pa. Commonwealth Ct. 409, 371 A.2d 533 (1977).

[3] *See* referee's Finding No. 2. Although not briefed or argued, we note that The Pennsylvania Workmen's Compensation Act, *See* Footnote No. 5, provides in Section 101, 77 P.S. §1 as follows:

That this act shall be called and cited as The Pennsylvania Workmen's Compensation Act, and *shall apply to all injuries occurring within this Commonwealth,* irrespective of the place where the contract of hiring was made, renewed, or extended, and extraterritorially as provided by section 305.2. (Emphasis added.)

Section 305.2, 77 P.S. §411.2, which contains certain extraterritorial provisions, provides the following at Subsection (c)(3)(ii):

(ii)   If such employer's liability under the workmen's compensation law of such other state is insured, such employer's carrier, as to such employe or his dependents only, *shall be deemed to be an insurer authorized to write insurance under and be subject to this act:* Provided, however, That unless its contract with said employer requires it to pay an amount equivalent to the compensation benefits provided by this act, its liability for income benefits or medical and related benefits shall not exceed the amounts of such benefits for which such insurer would have been liable under the workmen's compensation law of such other state. (Emphasis added.)

Under Illinois law, Employer achieved basic coverage by direction of the Illinois Industrial Commission under its Assigned Risk Plan.

Such assignment under Illinios law is mandated when an employer's request for coverage is declined by two insurers. 73 Ill. Stat. §1083.

Section 1083(a) of the Illinois Insurance Code, provides in relevant part as follows:

> When it is found by the Commission that the application of an employer for compensation or occupational diseases insurance has been rejected by 2 carriers and that such employer is entitled to insurance, the Commission shall designate *a carrier which shall be obligated to issue forthwith a standard policy, including upon request of the insured coverage, commonly referred to as the all-states endorsement for unexpected liability arising in a state where operations were not expected at the time the policy was written* . . . (Emphasis supplied.)

As will be perceived, insurance coverage is mandated in this case for Pennsylvania, provided only that there be a "request of the insured [for] coverage, commonly referred to as the all-states endorsement for unexpected liability arising in a state where operations were not expected at the time the policy was written . . ." The issue, therefore, is purely whether there was a "proper request of the insured" for the all-states endorsement which would include Pennsylvania coverage, and whether or not that request, when honored, willingly or unwillingly, would result in liability for an injury occurring prior to the date of the all-states endorsement.

The all states endorsement provides, in part:

> It is agreed that:
>
> 1. If the insured undertakes operations in any state not designated in Item 3 of the declara-

tions, other than [Nevada, North Dakota, Ohio, Washington, West Virginia or Wyoming], Coverage A applies to such operations (Workmen's Compensation Coverage).

. . . .

5. The insured shall give notice to the company before or within a reasonable time after the commencement of such operations, but failure to give notice shall not invalidate the insurance. The insured shall, if requested by the company, take whatever action is necessary to come within the workmen's compensation and occupational disease laws of such state.

R.R. p. R-16.

There was testimony which the referee could accept that on either October 8, 1979 or October 9, 1979, Employer requested the all-states endorsement by application to its insurance agency and that the agency wrote to Insurer on October 10, 1979 requesting same, effective as of September 19, 1979. It is also apparent that under the standard policy, coverage was provided until October 31, 1979, with cancellation as of that date by notice dated November 14, 1979.

The referee's relevant findings on the coverage issue are set forth in his 2nd and 3rd findings as follows:

2. That on October 9, 1979, the Defendant Insurance Carrier, American Mutual Insurance Company, was the Workmen's Compensation Carrier for Defendant, Natural Marble & Onyx Company pursuant to Policy No. WC 488527-01-9-D and obligated thereunder not only for payment of Workmen's Compensation Benefits for Claimant arising in the State of Illinois, but also was obligated for payment of Workmen's Compensation Benefits under Pennsylvania law in the event of compensable injuries sustained

by employees of the Defendant Employer in Pennsylvania.

3. The Referee's Findings of Fact No. 2 is based upon finding that Section 1083(a) of the Illinois Insurance Code required the Defendant Insurance Carrier to issue the Defendant Employer upon request, an all states endorsement of Workmen's Compensation Insurance for unexpected liability arising in a state where operations were not expected at the time the policy was written, that for all states coverage to be effective, the Defendant Employer was required to make such a request, to give such notice of its undertaking of such operations within a reasonable time after commencement thereof, and the Defendant Employer herein did make a timely request, did give reasonable notice to the Defendant Insurance Carrier of its requirement for such coverage.

R.R. p. R-6.

While it is apparent that these findings contain conclusions of law which we are not required to accept but may review, we must state our agreement with the legal conclusions reached.

At the outset, we note that the Employer did have workmen's compensation coverage for all of its employees, certainly those hired in Illinois and transported to the Philadelphia job, so that coverage of other employees required to be employed locally was a simple matter of adding the employees, with no employment difference from those already covered.[4] There remained only to clarify that there were Pennsylvania employees

---

[4] The hiring of Pennsylvania employees as with any other employees added to the work force, in practice simply presents an increase in the payroll compensation for calculating premium charges.

added in the coverage already provided. Furthermore, Pennsylvania law would be violated here if workmen's compensation coverage were not provided.[5] Significantly, there is nowhere provided in the insurance coverage nor in the all-states endorsement that coverage would not ensue in the event that a loss was suffered by injury to one not employed prior to the time when "an unexpected liability" arose. Rather it is provided only that there be a request for the additional coverage, which would be provided for Pennsylvania liability with a proviso in that endorsement only that the "notice to the company [be] before or within a reasonable time after the commencement of the [Pennsylvania operations], but failure to give notice shall not invalidate the insurance." R.R. p. R-16.

Under familiar principles, of course, provisions of insurance policies are construed against the insurer who formulated the terms and provided the language involved, and in favor of the insured.[6] We cannot find error in the referee's and Board's application of Illinois law.[7]

Accordingly, we will affirm the conclusion of the compensation authorities that coverage existed here with liability of American Mutual Liability Insurance Company to pay compensation on October 9, 1979 when Decedent suffered his injury that resulted in his death on October 10, 1979.

---

[5] Act of June 2, 1915, P.L. 736, §305, *as amended*, 77 P.S. §501.

[6] For an example of liberal construction to provide coverage, see *Jarvis v. Workmen's Compensation Appeal Board*, 497 Pa. 379, 441 A.2d 1189 (1981).

[7] See *Myers v. Commercial Union Assurance Co.*, 506 Pa. 492, 485 A.2d 1113 (1984), where it was held that an Illinois workmen's compensation insurer must reimburse a Pennsylvania no-fault carrier for payment of medical expenses arising from a work injury in Pennsylvania.

COMPENSABILITY OF INJURY AND DEATH

On the question of causation raised by Insurer, the referee found:

5. That on the aforesaid date while in the course of his employment with the Defendant, the decedent fell a distance of 7-8 feet from a scaffold striking his head first on a wooden workbench and then on a concrete floor.

6. That as a result of this occurrence decedent suffered extensive traumatic fractures of the skull with subfaleal [sic] hematoma, extradural hematoma, diffuse subarachnoid hemorrhage and multiple cerebral and cerebeller contusions.

R.R. p. R-7, *See* R.R. p. R-13.

Contrary to the Insurer's contention, we find that these findings are amply supported by substantial evidence, including the Certificate of Death,[8] the Autopsy Report[9] and the unequivocal testimony of Claimant's expert medical witness, Stephen D. Silberstein, M.D.[10]

Insurer contends, however, that there was a failure of substantial evidence to support the finding of causal relationship here because, under Section 301(1) of The Pennsylvania Workmen's Compensation Act (Act), 77 P.S. §411(1), the injuries sustained by the deceased Employee were not such as "arising in the course of his employment and related thereto . . . and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects." In support of this contention, Insurer contends that liability should be denied on the basis that the injury and death were due to Decedent's alcoholism, which Insurer sees as an expla-

---

[8] Exhibit C-1, hearing 5/15/80, p. 7.

[9] Exhibit C-4, hearing 5/15/80, p. 10.

[10] Deposition November 4, 1983, marked C-1, 12/27/83.

nation of the fall.[11] First of all, alcoholism is not designated in the Workmen's Compensation Act as a basis for denying liability. Under Section 301(a) of the Act, 77 P.S. §431, however, which proscribes payment of compensation for injury or death "caused by the employe's violation of the law," we have supported the denial of benefits for injury or death due to intoxication under circumstances where the defendant meets its burden of proof to establish that the condition of the employe was a violation of law. *Hemer v. Workmen's Compensation Appeal Board (Miller Express)*, 71 Pa. Commonwealth Ct. 174, 454 A.2d 225 (1983). Our review of the record reveals no evidence of intoxication of Decedent or any violation of law that caused his injury or death.

Insurer's further contention that Decedent's pre-existing condition of alcoholism so weakened him, causing unsteadiness that accounted for his fall, is equally without merit, as the referee properly found, as is the further argument that cases decided prior to the 1972 amendments to the Act and which support recovery for injuries caused by pre-existing conditions are no longer authoritative since re-enacted provisions of the Act are more restrictive on the the rights of injured workers. Both contentions are effectively put to rest by our decision in *Krist v. Workmen's Compensation Appeal Board*, 55 Pa. Commonwealth Ct. 127, 422 A.2d 1220 (1980), where the referee and Board had denied bene-

---

[11] The refereee found otherwise. His Finding of Fact No. 12 reads:

12. That there is no evidence to support Defendant's allegation set forth that (a) Decedent's death was caused by seizure and other complications due to a pre-existing condition or (b) that Claimant and decedent were living apart at the time of his death and that Claimant was not actually dependent upon him and receiving from him a substantial portion of her support.

fits based on the fact that claimant's injury was related to a pre-existing condition of dizziness, holding that such an injury was not one "arising in the course of . . . employment and related thereto . . . ," as required by Section 301(c) (1), 77 P.S. §411(1). In reversing, we there stated:

> In Workmen's Compensation Appeal Board v. U.S. Steel Corp., 31 Pa. Cmwlth. 329, 376 A.2d 271 (1977) allocatur refused sub nom. Slaugenhaupt v. U.S. Steel Corp., Nov. 29, 1977, an epileptic employee suffered a seizure and lost control of his automobile which struck a concrete abutment in the employer's parking lot, causing fatal injuries. We held the employee's death to be compensable, rejecting the argument that it was not related to his employment because the seizure caused the automobile to be out of control. We there reasoned that the phrase 'and related thereto' added to Section 301(c)(1) by the 1972 amendments to the Act which also greatly enlarged workmen's benefits should not be interpreted 'as imposing an additional condition to compensability in cases which were compensable prior to the adoption of the 1972 legislation. In our view, the phrase has crucial application only in cases which would not have been compensable prior to 1972; that is, cases in which the injuries do not result from an "accident" as that phrase was formerly variously defined.' *Id*. at 334, 376 A.2d at 274. Hence, if Mrs. Krist's injuries as the result of her fall were compensable before the 1972 amendments, they remain so.
>
> In McCarthy v. General Electric Co., 293 Pa. 448, 143 A. 116 (1928), workmen's compensation benefits were claimed by the widow of an em-

ployee who was found unconscious at his workplace after an unexplained fall. The referee denied benefits on the basis of testimony that the deceased employee had syphilitic brain tumor which, it was argued, was the proximate cause of the fall. The Supreme Court rejected this argument holding that:

it is not necessary that the fall result from an accident, as the fall is the accident; nor is it material that the employee fell because he became dizzy or unconscious. An injury sustained by an accidental fall is compensable although the fall resulted from some disease with which the employee was afflicted. In the instant case McCarthy was not without the protection of the Act, if hurt by a fall, although it resulted from a lapse of the brain, whether it was [the tumor] or merely vertigo. An accidental injury during the course of employment, from an unexplained cause is compensable and the burden is not on a claimant to show the exact cause [citations omitted]. *Id.* at 451-452, 143 A. at 117-118.

Later decisions have reiterated the principle that injuries received by an employee in a fall on the employer's premises during working hours are compensable even though the fall was caused by a preexisting physical condition of the employee totally unconnected with his employment. See Miller v. Schiffner, 196 Pa. Super. 84, 173 A.2d 707 (1961); Allen v. Patterson-Emerson-Comstock, 180 Pa. Super. 286, 119 A.2d 832 (1956); Dunbeker v. Duquesne Brewing Co., 141 Pa. Super. 80, 14 A.2d 905 (1940). See also 1 A Barbieri, Pennsylvania Workmen's Compensation and Occupational Disease §318 (1975).

55 Pa. Commonwealth Ct. at 130-131, 422 A.2d at 1221.

Accordingly, Insurer's lack of causal relationship contention is without merit.

WIDOW AND CHILDREN AS DEPENDENTS

Compensation for compensable deaths is payable to certain dependents as defined in Section 307 of the Act, 75 P.S. §§542, 561, 562 and 581. Under this section, compensation is payable to children, or on their behalf to a surviving widow, regardless of support for the validity of a widow's personal claim. Section 307.7 of the Act, 75 P.S. §562, provides that "[c]ompensation shall be payable under this section to or on account of any child . . . only if and while such child . . . is under the age of eighteen unless such child . . . is dependent because of disability when compensation shall continue or be paid during such disability of a child . . . over eighteen years of age . . . or unless such child is enrolled as a full-time student in any accredited educational institution when compensation shall continue until such student becomes twenty-three."

Apparently no contest exists as to the dependency status of the children of decedent, if decedent's death is compensable, nor as to the extent of the awards to them.[12]

---

[12] The referee's Finding No. 8 reads:

8. That the decedent was survived by his widow, Geni Davenport, to whom he was married on December 19, 1964 and who was living with him at the time of his death. Decedent was likewise survived by two children born of that marriage, Robert Davenport, born October 15, 1966 and David Davenport, born November 15, 1967, Decedent's widow and children were actually dependent upon him for support at the time of his death. Decedent's son David Davenport was born disabled because of birth related brain damage and remains totally disabled. The decedent's son Robert Davenport is enrolled as a full-time student at Burlington Community College, an accredited educational institution.

The widow's right, however, is contested by Insurer referring to the provision in Section 307.7 which reads:

No compensation shall be payable under this Section to a widow unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support.

The referee found that Claimant "was living with decedent at the time of his death."[13]

The referee's third Conclusion of Law reads:

3. Claimant has met her burden of proof that she was married to the decedent, was living with him at the time of his death and was then actually dependent upon him and receiving from him a substantial portion of her support.

R.R. p. R-8

We find that there is substantial evidence to support the referee's finding and conclusion as to the widow's dependency under the Act. While it is true that the marriage of Claimant and Decedent was a stormy one, there is no period of separation of this couple during which Claimant abandoned the marital relationship. At one stage there was a court ordered support provision in favor of Claimant.[14] There is testimony that the referee could accept that at the critical time of death, Claimant and Decedent were separated only because of her employment in New York; that he then resided with Claimant at a residence owned by his parents in Medford Lakes, New Jersey, in every respect as husband and wife. Noting the two-pronged test in Section 307 for determining "dependency" of a widow, either the re-

---

[13] Finding No. 8, quoted in Footnote 12 above.

[14] See *Binkley v. Stone & Webster Eng. Corp.*, 156 Pa. Superior Ct. 381, 40 A.2d 132 (1944).

ceipt of support or simply "living with" her spouse, we held in *E & S Fabricating & Welding Company v. Workmen's Compensation Appeal Board (Edmond)*, 51 Pa. Commonwealth Ct. 111, 413 A.2d 1182 (1980), that the term "living with" must be liberally construed and that "the dependency question is peculiarly one of fact to be adjudged by the compensation authorities," citing *Urso v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 184, 394 A.2d 1322 (1978); *Miterko v. Jeddo-Highland Coal Co.,* 201 Pa. Superior Ct. 384, 192 A.2d 421 (1963).

Since there is substantial evidence in the record to support the referee's findings and conclusions of compensable dependency, we must reject Insurer's contentions to the contrary.

## WAGE COMPUTATION

As in all workmen's compensation cases, the provisions for computing the average weekly wage on which the award of benefits must be based are contained in Section 309 of the Act, Section 77 P.S. §582(d), the portions of which, relevant here, read:

> (d)  If at the time of the injury the wages are fixed by the . . . hour . . . the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employee earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury . . .
>
> ****
>
> If the employe has been in the employ of employer less than thirteen calendar weeks . . . immediately preceding the injury, his average weekly wage shall be computed under the fore-

going paragraph, taking 'total wages' for such purpose to be the amount he would have earned had he been so employed by an employer the full thirteen calendar weeks . . . immediately preceding the injury . . .

Since Decedent only worked one day at a job which paid $12.05 per hour the referee apparently computed total wages by multiplying $12.05 by 40 hours grossing a weekly total of $482.00, which would be multiplied by 13 weeks. Dividing this total by 13 results, of course, in an average weekly wage of $482.00, the amount fixed by the referee.[15]

The same result is reached under the terms of the last paragraph of Section 309(e) which reads:

If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, [t]his computation shall apply, viz.: Divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the number of days he worked for such employer during such period multiplied by five.

Thus, under the quoted portion of Subsection (3), assuming a one-day pay of eight hours at $12.05 per hour, as noted, the same result is reached: 8 x $12.05 provides a daily rate of $96.40, multiplied by five equals $482.00 *See Guttman Oil Co. v. Workmen's Compensation Appeal Board (Miller),* 57 Pa. Commonwealth Ct. 486, 426 A.2d 760 (1981).

Finally, there is no merit in Insurer's contention that the seasonal occupation formula in Section 309(e), 77

---

[15] *See McStay v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 151, 465 A.2d 127 (1983); *Frank Irey, Jr., Inc. v. Workmen's Compensation Appeal Board,* 67 Pa. Commonwealth Ct. 512, 448 A.2d 647 (1982).

P.S. §582(e), first paragraph, should be applied here. There is no basis on which marble setting can be termed "seasonal." Many years ago the nature of what is a seasonal occupation under Section 309 was discussed by our Supreme Court in the case of *Froehly v. Harton,* 291 Pa. 157, 139 A. 727 (1927). It was there stated:

> Seasonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it. On the other hand, labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is certainly not seasonal.

*See also Dazely v. Luckenbach Steamship Co.,* 133 Pa. Superior Ct. 507, 3 A.2d 190 (1938), aff'd 336 Pa. 432, 9 A.2d 905 (1939).

Pursuant to the foregoing, we will affirm.

### ORDER

Now, August 11, 1987, the order of the Workmen's Compensation Appeal Board as of No. A-89807, decided April 25, 1986, is hereby affirmed.