610 A.2d 530

HANKIN TRANSPORTATION PERSONNEL, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (Robert BRUTT), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 13, 1992.

Decided May 27, 1992.

Petition for Allowance of Appeal
Denied Dec. 30, 1992.

Terry L.M. Bashline, for petitioner.

Eric P. Betzner, for respondent.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This petition for review is brought by the employer Hankin Transportation Personnel (Hankin) from an order of the

Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting to Robert Brutt $347.00 in weekly benefits for a serious injury.

The sole question raised in this appeal is whether the referee used the proper method to ascertain Brutt's weekly wage and consequently, his weekly benefits.

Brutt was injured in the course of his employment with Hankin on October 20, 1986. He was employed for only one day as a jockey driver on the date of the injury. Brutt was initially paid compensation at a rate of $300.00 a week, based on an average daily wage of $90.00 and an average weekly wage of $450.00.

Hankin filed a review petition on December 7, 1987, asking the Referee to review the average weekly wage calculation since it did not have accurate wage information when it issued the original Notice of Compensation Payable. Hankin submitted that Brutt's correct average weekly wage was $154.83, based on wages of similarly situated employees. The Referee found that Section § 309(e) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(e), applied, and that the average weekly wage of $450.00 initially calculated by Liberty Mutual was correct. Hankin appealed on the basis that Section 309(d), 77 P.S. § 582(d), was controlling, since Brutt worked for less than thirteen calendar weeks for it.

The Board reversed the Referee, finding that Section 309(d) was the applicable section, but remanded that case to the Referee with directions to examine the wages of all truck drivers employed by Hankin Transport and to use those wages to calculate Brutt's average weekly wage.

Additional testimony was then presented to the Referee showing that, pursuant to a nationwide teamsters contract, full-time employees were paid pursuant to a 70–80–90% rule. In the first full year of employment, wages were paid at 70% of the full time wage; in the second year wages were paid at 80%, and so on. The purpose for this wage schedule was to encourage long-term employees and to guarantee yearly raises

in the first four years. Although this evidence was presented, Hankin argued that it was illogical to compare long distance drivers with jockey drivers and that even if a comparison could be made, it was unfair to compare the wage of an employee in his first day of employment with drivers who had more than four years of employment.

The referee in his decision did not accept Hankin's arguments, and simply added all of the employees' wages together and divided by the number of employees to get an average weekly wage. This average weekly wage calculation was even higher than the referee's initial calculation. Hankin appealed primarily on the basis that it was incorrect for the referee to consider the wages of all the other truck drivers employed by it, when they did not perform similar jobs, receive similar pay, or work similar hours.

The Board held that the referee, on remand, correctly applied § 309(d) of the Pennsylvania Worker's Compensation Act in determining the average weekly wage of $602.12 and awarded $347.00 in weekly benefits.

Section 309 of the Workmen's Compensation Act provides in its pertinent part:

Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employe, ascertained in accordance with rules and regulations of the department as follows:

(a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the average weekly wage;

(b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

(d) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the

employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury;

If the employe has been in the employ of employers less than thirteen calendar weeks (or three calendar months, if the employe receives wages monthly or semi-monthly) immediately preceding the injury, his average weekly wage shall be computed under the foregoing paragraph, taking "total wages" for such purpose to be the amount he would have earned had he been so employed by employer the full thirteen calendar weeks (or three calendar months) immediately preceding the injury and had worked, when work was available to other employes in a similar occupation, unless it be conclusively shown that by reason of exceptional causes such method of computation does not ascertain fairly the "total wages" of employe so employed less than thirteen calendar weeks (or three calendar months).

Section 309 has been the subject of many appeals to this Court. As early as 1971, this Court reviewed and affirmed a decision which awarded compensation based on forty hours per week to a claimant who had only worked thirty-two hours the first week, thirty-seven hours the second, and thirteen and three-quarters hours the third week, because there was no evidence to indicate that less than forty hours of work per week was available. *Columbia Packagings Inc. v. Leffler*, 1 Pa.Commonwealth Ct. 496, 276 A.2d 331 (1971).

Again in 1972, this Court had before it the question of how to compute the average weekly wage of a part-time employee who had worked only two weeks. The Board computed his lost wages by taking the employee's total wages for two weeks and dividing it by days worked to determine his weekly wage. We held that computation to be in error since the claimant had been found to be a part-time employee covered by the second paragraph of Section 309(d). We remanded the case to the Board to ascertain what an employee doing similar jobs would have earned in the thirteen weeks prior to the claimant's

employment. *Kraft v. Herr's Island Packing Co.*, 7 Pa.Commonwealth Ct. 343, 298 A.2d 275 (1972).

In 1979, the claimant in *Kraft* again appealed to this Court after remand and we upheld the Board's reversal of the referee. We summarized the Board's actions as follows:

> The Board reversed the referee's order and correctly held that although regular employees in 1963 were guaranteed forty-hour minimum weeks, temporary employees like claimant worked only when work was available and were paid only for their hours of actual work. The Board reviewed the exhibit submitted by the employer and took notice of the wages of those employees indicated as temporary. Using the wage of the temporary employee with the highest quarterly earnings, $283.83, the Board calculated claimant's wages for the purposes of compensation. At the stipulated 50% disability, two-thirds of one-half of claimant's weekly salary of $21.83 is $7.28.

*Kraft v. Workmen's Compensation Appeal Board,* 41 Commonwealth Ct. 516, 519, 399 A.2d 1153, 1154 (1979).

In *Frank Irey Jr., Inc. v. Workmen's Compensation Appeal Board (Klemencic),* 67 Pa.Commonwealth Ct. 512, 448 A.2d 647 (1982), this Court affirmed the Board's decision upholding the referee's computation of the employee wages for an employee who had only worked approximately two weeks. The weekly wage calculation was based upon that employee's salary for those two weeks only. The employer in *Irey* contended that the referee should have developed the wages of "similar employees." There, we said:

> Irey seems to be contending that the phrase ["had worked, when work was available to other employes in a similar occupations"] required a computation based not on the claimant's wages but on the wages of others in similar occupations. This is not in our opinion what the statute means. The phrase in question simply describes the second of two assumptions to be employed in using the thirteen week period in the case of a worker employed less than thirteen weeks—to wit, that the employee had actually worked when work was available. The referee's computa-

tion reached the proper result. Further, Irey did not show what other welders made, nor contest that the claimant's wages were other than stated.

*Id.,* 67 Pa.Commonwealth Ct. at 517–518, 448 A.2d at 650.

In *Miller v. Workmen's Compensation Appeal Board (Burnham Corp.),* 72 Pa.Commonwealth Ct. 253, 456 A.2d 1114 (1983), we upheld a Board's decision affirming a referee when he invoked the exception clause provision in Section 309(d). In that case, apparently the employees in positions similar to the claimant typically earned weekly wages in the wide range between $195.28 and $313.95, so the referee used the claimant's wages for certain of two weeks that he actually had worked.

In *McStay v. Workmen's Compensation Appeal Board,* 77 Pa.Commonwealth Ct. 151, 465 A.2d 127 (1983), the employee was injured after four days at work, and his wages were computed by multiplying his daily rate by sixty-five (the number of work days in a thirteen week period) and dividing that by thirteen. Since the petitioner was the claimant, no question was raised of how the "similar employees" clause affected his average weekly wage. The Court simply rejected the contention that the *Columbia Packagings* hourly calculation method should have been used.

Finally, in deciding the correctness of the referee's calculation in this case, we turn to *American Mutual Ins. Co. v. Workmen's Compensation Appeal Board (Davenport and Natural Marble & Onyx Company),* 108 Pa.Commonwealth Ct. 345, 530 A.2d 121 (1987), where, in computing the wages of all employees who had worked one day, Judge Barbieri pointed out that the same result as that reached under Section 309(d) occurred when applying the last paragraph of Section 309(e). That clause reads:

If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is *less* than computed as follows, [t]his computation shall apply, viz: divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the number of days he

worked for such employer during such period multiplied by five.   (emphasis added).

Thus, by this paragraph the workmen's compensation authorities are instructed to determine the average weekly wage by using the *greater* of the amounts calculated under either subsections (a) (b), (c), (d) or the first three paragraphs of subsection (e) and the *last* paragraph of subsection (e) quoted above, which takes the total wages earned divided by days worked *and uses a multiplier of five.*

As we have pointed out, the referee originally ascertained that Brutt's weekly wage would have been $450.00 with a weekly benefit of $300.00.   The Board held that this was error and remanded for the ascertainment of the wages of the regular drivers, because it concluded that the word " 'similar' in the statute did not mean 'identical' " and therefore the *wages of the regular drivers* were relevant to determine Brutt's weekly wages.

Hankin contends that this was error and we agree.   The wages of *these* drivers are not to be used to decide Brutt's weekly wage.   It is to be noted that the second paragraph of Section 309(d) provides that the total wages are to be "computed under the foregoing [i.e., first] paragraph."   In other words, the wages are to be computed the same as if the employee worked for more than thirteen weeks.   The latter paragraph simply instructs the workmen's compensation authorities to assume an employee "had worked, when work was available to other employees in a similar occupation."   *Irey.*

Therefore, since it is clear that clauses (a), (b) and (c) do not apply here, we turn to Section 309(d), for which it is first necessary to show that work was available in a similar occupation.   For the purpose of construing the word "similar" in this context, we agree with the Board and hold that regular truck drivers occupation is similar to casual jockey.   Both are truck drivers.   To construe this limiting clause otherwise would ignore the liberal construction of the Act.   Then Brutt's wages should have been calculated using the *greater* of the formulas set forth in subsection (d) and the last paragraph of subsection (e).   Brutt's resulting average weekly wage is the same in

each case. Following Judge Doyle's example in *McStay* and Judge Barbieri's example in *American Mutual*, the computation of Brutt's weekly wage should be as follows:

He was paid $11.25 an hour or $90.00 a day. The daily rate is multiplied by 65 and divided by 13 weeks, thus resulting in a weekly wage of $450.00 and total compensation benefits of $300.00. *See McStay.*

Or under *American Mutual*, Brutt's average weekly wage is:

| | |
|---|---|
| $90.00 | total wages earned by Brutt during last two completed quarters with Hankin. |
| ÷ 1 | Number of days worked with Hankin. |
| 90.00 | |
| × 5 | multiplier provided for in Section 309(e), last paragraph. |
| $450.00 | AVERAGE WEEKLY WAGE |

---

We therefore reverse the decision of the Board with directions to order an award of benefits of $300.00 a week.

## ORDER

AND NOW, this 27th day of May, 1992, it is hereby Ordered that the Workmen's Compensation Appeal Board order at No. A–91–311, dated September 13, 1991, is hereby reversed and the matter is remanded to the Board to grant benefits in the amount of three hundred dollars ($300.00) per week.

Jurisdiction relinquished.