## Empire Box Corp. of Stroudsburg v. Chesnut et al.

*Sterling G. McNees* and *James H. Booser*, of *McNees, Wallace & Nurick*, for petitioner.

*M. Louise Rutherford*, Deputy Attorney General, and *James H. Duff*, Attorney General, for respondents.

RUPP, J., March 5, 1945.—This matter comes before us on a demurrer to the return to an alternative writ of mandamus.

The petition for the writ sets forth, inter alia, that petitioner is a Delaware corporation duly qualified to do business in Pennsylvania and operating a mill at Stroudsburg, Pa., for the manufacture of paper board; that it petitioned the Industrial Board to approve for installation and use as dryers in its mill 80 used unfired pressure vessels manufactured prior to 1937 and located outside of the Commonwealth; and that the board granted petitioner permission to install and operate the vessels, subject to their passing certain tests, for a limited period of one year as a "Pennsylvania War Special".

The only material averments of the petition denied in the return are that the vessels involved were manufactured prior to 1937 and located outside of the Commonwealth. We do not deem the denials sufficient in law. Moreover, at the argument the truth of these averments was conceded.

Unfired pressure vessels were first made the subject of legislation in Pennsylvania by the Act of May 27,

1937, P. L. 912, which amended the Boiler Law of May 2, 1929, P. L. 1513, 35 PS §1301, et seq., by extending its provisions to such vessels. The amendatory act became effective September 1, 1937.

Section 4 of the Boiler Law, 35 PS §1304, reads as follows:

"Every boiler [the definition of the word contained in Section 1 having been amended to include unfired pressure vessels] destined for use in this Commonwealth shall be inspected during its construction, by an inspector who shall have been commissioned by this Commonwealth to perform such service. Every such boiler which has been so inspected shall, upon completion, have placed upon it, in the presence of the said inspector, a stamp bearing a symbol and number authorized by the department for this purpose."

It is the contention of the Commonwealth that since the vessels involved were not inspected during construction they fail to meet the standards of safety prescribed by the Boiler Law, as amended, and thus cannot be approved generally for installation and operation in Pennsylvania.

Petitioner admits that the vessels were not inspected during construction, but urges that since they were manufactured in 1924 and 1931, or before the effective date of the amendatory act, the above section is inapplicable to them.

Parenthetically, petitioner does not contend that the vessels are not to be subjected to any or all of the other tests and safeguards provided by the Boiler Law, as amended, and the rules and regulations of the Department of Labor and Industry promulgated thereunder and approved by the Industrial Board.

Hence, the question for our determination resolves itself into whether the provision with respect to inspection during construction is prospective or retroactive.

Even if the language of the amendatory act were ambiguous, the presumption would be against any legislative intent such as that alleged by the Common-

wealth—that vessels already manufactured be inspected during construction—which would contemplate an absurd and unreasonable result and one impossible of execution: Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552; Null v. Staiger, 333 Pa. 370 (1939); Watson v. Witkin et al., 343 Pa. 1 (1941); Driskel et al. v. O'Connor et al., 339 Pa. 556 (1940).

But the wording of the statute is clear. Not only is it entirely devoid of that imperative mandate or clear and manifest legislative intent necessary for a retrospective construction: section 56 of the Statutory Construction Act, supra, 46 PS §556; Painter v. Baltimore & Ohio Railroad Co., 339 Pa. 271 (1940); Commonwealth v. Repplier Coal Co., 53 Dauph. 191 (1942). affirmed in 348 Pa. 372 (1944); Commonwealth ex rel. v. Greenawalt, 347 Pa. 510 (1943); but the amendment to section 13 resolves any possible doubt in favor of a prospective interpretation by specifically providing that all unfired pressure vessels in the Commonwealth on the effective date of the enactment, although obviously not inspected during construction, may continue to be used upon registration and, of course, subject to subsequent yearly inspection.

Having saved the aforesaid vessels, was it the intent of the legislature to forever bar similar vessels simply because they were without the Commonwealth on September 1, 1937? If so, is the statute constitutional?

The Commonwealth maintains the legislature so intended and that, in the exercise of its police power, the State properly could enact legislation so distinguishing unfired pressure vessels manufactured prior to the said date.

There is no question that in the exercise of its police power the Commonwealth could protect and safeguard the public by enacting the Boiler Law and amending it to embrace unfired pressure vessels. However, it is

equally well established that in order to be sustained classifications made in the exercise of that power must be based on some real and substantial difference which bears a reasonable and just relation to the object of the legislation, and that the constitutional guarantee of equal protection of the laws will be interposed against discriminations that are entirely arbitrary: Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 72 L. ed. 770 (1928) ; Quaker City Cab Co. v. Commonwealth of Pennsylvania, 277 U. S. 389, 72 L. ed. 927 (1928) ; Smith v. Cahoon, 283 U. S. 553, 75 L. ed. 1264 (1931) ; Juniata Limestone Co., Ltd., v. Fagley, 187 Pa. 193 (1898) ; Commonwealth v. Shaleen, 30 Pa. Superior Ct. 1 (1905), affirmed in 215 Pa. 595 (1906).

Here, the object of the enactment is the protection of the public safety; the only basis for the Commonwealth's classification is the situs of the vessels on its effective date. We fail to see how the public safety could be affected by the geographical location of the vessels at that time. Or, to state it differently, we cannot discover why, as between divers vessels not inspected during construction, those within the Commonwealth on September 1, 1937, would be less dangerous than those without. If the latter were not distinguishable from the former in 1937, we can see no reason why, upon being successfully tested and registered, they would be distinguishable now. Hence, the Commonwealth's classification is unjustified and wholly arbitrary.

It follows that, as construed and applied by the Commonwealth in this case, section 4 would be repugnant to the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

The presumption is against a legislative intent to pass such enactments—section 52 of the Statutory Construction Act, supra, 46 PS §552—and we do not so construe or apply the section. Rather, we believe it to be prospective as to all unfired pressure vessels man-

ufactured prior to the effective date of the amendatory act, irrespective of their whereabouts at that time, and hence constitutional.

Accordingly, the fact that the vessels involved were not inspected during construction cannot be made the basis for their rejection.

Therefore, a preëmptory writ of mandamus must. issue.

An order directing the issuance of such a writ was made on March 5, 1945.