Don T. Leap, Appellant, *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Appellee.

Argued January 7, 1974, before President Judge
BOWMAN and Judges KRAMER, WILKINSON, JR., MEN-
CER, ROGERS and BLATT. Judge CRUMLISH, JR. did not
participate. Reargued June 5, 1974, before President
Judge BOWMAN and Judges CRUMLISH, JR., KRAMER,
WILKINSON, JR., MENCER, ROGERS and BLATT.

*Norman I. White*, with him *McNees, Wallace &
Nurick*, for appellant.

*Joseph M. Hill*, Assistant Attorney General, with
him *Charles S. Solit*, General Counsel, for appellee.

OPINION BY JUDGE WILKINSON, July 10, 1974:

This case involves an appeal from a decision by
the Industrial Board of the Department of Labor and
Industry, appellee, denying Don T. Leap, appellant,
permission to operate two German-built steam locomo-
tives, one built in 1936 and bought by the appellant
in 1969, the other built in 1927 and bought in 1970.
Appellant seeks to use these locomotives in the Bedford
area as tourist attractions. In 1969 and 1970, the loco-
motive built in 1936 was field inspected by a representa-
tive of the boiler division of the Department of Labor
and Industry with the result that the locomotive was
stamped with the inspector's number and the seal and

insignia of the Commonwealth. The 1927 locomotive was field inspected in 1972 with identical results.

On July 6, 1972, appellant was advised by the Industrial Board that his request for permission to operate the locomotives was "denied in view of the fact that the boilers were not designed and constructed, stamped or inspected as required by the Pennsylvania Boiler Law." An appeal was timely taken and on September 27, 1972, a hearing was held before the Industrial Board which denied appellant's application on June 27, 1973. This appeal followed.

The difficult question posed by this appeal was clearly stated in appellee's brief: Does the Department of Labor and Industry have the "legal authority to issue a permit for the operation of two steam locomotives . . . which were not shop inspected during construction for public safety before being shipped into the Commonwealth, as required by the Boiler Act of May 2, 1929, as amended"? The answer to this question must encompass a careful consideration of Sections 4 and 16 of the Act of May 2, 1929, as amended, 35 P.S. §1304 and §1316. These two sections read as follows:

"Section 4 [§1304 Inspection]

"Every boiler . . ., within the scope of this act, *destined for use* in this Commonwealth, *shall be inspected during its construction,* by an inspector who shall have been commissioned by this Commonwealth to perform such service. Every such boiler . . . which has been so inspected shall, upon completion, have placed upon it, in the presence of the said inspector, a stamp bearing a symbol and number authorized by the department for this purpose: *Provided, That any boiler built prior to December 31, 1929 . . . and which ha[s] not been removed from the Commonwealth subsequent to such applicable date, shall not be required to be shop inspected.*

"Section 16 [§1316 Enforcement]

"After the effective date of these amendments, no boiler . . . shall be permitted to be installed or used in this Commonwealth, which does not comply with the provisions of this act and the rules and regulations of the department as herein provided for, and it shall be the duty of the Department of Labor and Industry to enforce the provisions of this act. [1929, May 2, P. L. 1513, §16; 1957, July 12, P. L. 822, §9.]"

The Industrial Board applied the two above sections in denying appellant's request for permission to operate his locomotives. Appellant has raised two arguments: (1) The Board's action failed to properly apply Section 4, and (2) The results of the Board's decision are repugnant to the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

There is no doubt that the proviso to Section 4 does not require a boiler (1) built prior to December 31, 1929, and (2) which has not been removed from the Commonwealth subsequent to the date to be shop inspected. Appellant claims that the 1927 German-built boiler comes within the terms of the proviso and, therefore, did not have to be shop inspected. While such an interpretation at first seems plausible, the effect of such an interpretation would be to frustrate the obvious intent of the Legislature. The legislative requirement that boilers built prior to December 31, 1929, must be within the Commonwealth before that date in order to fall within the scope of the Section 4 proviso is ascertainable from the phrasing of the proviso itself. The phrase "and which ha[s] not been removed from the Commonwealth" can only be read so as to refer to boilers *in the Commonwealth* which had not been removed as of December 31, 1929, and not, as appellant urges, to any and all boilers (including those outside the Commonwealth) which had not been removed as of December 31, 1929. Adoption of appellant's interpreta-

tion would completely strip the above phrase of any meaning whatsoever.

Appellant next claims that the phrase "destined for use" in Section 4 only refers to those boilers which were *initially* destined for use in Pennsylvania; therefore, the 1927 boiler, "destined for use" in 1970, and the 1936 boiler, "destined for use" in 1969, must be exempt from the application of Section 4. Such a definition of "destined" is too restrictive.[1] These boilers were "destined for use" in Pennsylvania if "destined" is construed according to common and approved usage, Statutory Construction Act of 1972, Act of December 6, 1972, P. L.     Act No. 290, 1 Pa. S. 1903.

Appellant's second argument raises an equal protection issue. There is no doubt that a statutory "classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of legislation, so that all persons similarly circumstanced shall be treated alike." *Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S. Ct. 1029, 1035, 31 L. Ed. 2d 349, 359 (1972). The Pennsylvania Legislature has determined that boilers which have not been shop inspected during construction shall be treated differently from those which have been so inspected. After considering the safety objectives of the Act of May 2, 1929, the great difficulty in determining the quality of a boiler after it is built,[2]

---

[1] Random House Dictionary of the English Language, College Edition, 1968, defines "destined" as follows: "1. Bound for a certain destination. 2. Having as one's destiny to be or do something."

[2] The chief of the boiler division testified at the hearing as follows:

"Q. . . . you are telling us that he can't judge materials, workmanship and design after it has been built?

"A. That is exactly right, because there are all types of steel and metals used in the fabrication of boilers and vessels. You may have ten different grades of steel and only one particular grade would be applicable to this boiler. Without documentation, mere

and the great risk of harm to persons and property presented by unsafe boilers, we conclude that the Legislature, in establishing the classification outlined above, did not deny appellant any constitutional right.

Appellant further contends that the opinions of the Dauphin County Court, sitting as the Commonwealth Court, in *Empire Box Corp. of Stroudsburg v. Chesnut,* 56 Dauph. 338, 54 Pa. D. & C. 162 (1945), affirmed per curiam, 352 Pa. 418, 43 A. 2d 88 (1945), and *Commonwealth v. Penn Central Containers, Inc.,* 17 Pa. D. & C. 2d 239 (1958), are controlling. Neither of these decisions, however, considered the effect of the 1957 amendment on Section 16 of the Act of May 2, 1929. This amendment gives the Department of Labor and Industry authority to withhold permits as to those boilers which do not comply with the Act of May 2, 1929, *and* with the rules and regulations of the Department.

Pursuant to the 1957 amendment, the Department promulgated regulations, 34 Pa. Code §3.1 et seq., effective December 22, 1959, concerning the requirements for and installation of various boilers.[3] Two regulations are of particular importance here:

"§3.30 Nonstandard quality.

Shipment of nonstandard boilers (boilers which do not bear standards approved by the Board) . . . into this Commonwealth for use is prohibited.

---

test reports of physical and chemical analysis of the metal, you would have no way of knowing exactly what type of material was used in the construction of that equipment.

"Q. And you are saying that you can't tell what that material is after it is put together, you can only tell before?

"A. That is right."

[3] The regulations, which are as detailed as they are numerous, attempt to bring Pennsylvania's laws as to boilers into substantial compliance with the ASME Code (Code of the American Society of Mechancial Engineers).

"§3.65 Inspection during construction

(a) Boilers . . . within the scope of the [Act of May 2, 1929] for operation in this Commonwealth shall be inspected during construction by an inspector commissioned by the Commonwealth."

In view of the above regulations, the Department had no choice but to deny permits to the appellant and to ban the use of the two locomotives because their boilers had not been shop inspected.

This Court recognizes that the individual here involved may regard the Board's action as working an inequity, but many laws, such as the Act of May 2, 1929, which are for the maximum benefit of the public, naturally cause hardship for a few individuals. Here, the benefit to the public of higher standards and greater safety in the construction of boilers and locomotives, envisioned by the Act of May 2, 1929, certainly outweighs any hardship which may result to an individual.

The decision of the Industrial Board of the Department of Labor and Industry, dated June 27, 1973, is affirmed.

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent from the majority's holding that the appellant may not use the boiler built in 1927, brought to Pennsylvania in 1970 and not since removed from the Commonwealth.

In *Empire Box Corp. of Stroudsburg v. Chestnut,* 56 Dauph. 384, 54 D. & C. 162 (1945), the Dauphin County Court of Common Pleas held that unfired pressure vessels built outside Pennsylvania before pressure vessels were made subject to the Pennsylvania Boiler Law and brought into the state before that time were not barred from use within the state by Section 4 of the Boiler Law. The court construed the statute as being intended to have prospective, not retrospective,

effect in accordance with accepted principles of statutory construction. The court went on, however, to consider the case of similar vessels built outside the state and not imported until after September 1, 1937, the effective date of the amendment making the Act applicable to unfired pressure vessels. The Commonwealth contended that such vessels were outlawed from use in Pennsylvania by Section 4. The court concluded that a construction of Section 4 which would treat unfired vessels differently based upon whether they were imported before or after the amendment would result in an unconstitutional classification of (1) unfired vessels not inspected during construction but located within the Commonwealth prior to September 1, 1937 (permitted) and (2) unfired vessels not inspected during construction and not located within the Commonwealth prior to September 1, 1937 (forbidden). The court saw no reason founded in public safety for this classification and concluded that a construction of Section 4 requiring it would offend the equal protection clause of the 14th Amendment to the United States Constitution. The court decided that Section 4, properly construed, did not apply to any unfired pressure vessel manufactured prior to September 1, 1937, "irrespective of their whereabouts at that time." The case was affirmed per curiam by our Supreme Court, 352 Pa. 418, 43 A. 2d 88 (1945).

The proviso clause to Section 4 was added by the Act of December 22, 1959, P. L. 2007, and reads pertinently "Provided, that any boiler built prior to December 31, 1929 . . . and which [has] not been removed from the Commonwealth subsequent to such applicable date, shall not be required to be shop inspected." In my view, this proviso recognized the rule of *Empire Box* that the Legislature could not provide and therefore did not intend to provide that pre-1929 boilers should be divided into two categories, one for those

located within the state on December 31, 1929 and permitted to be used, and the other for those not located in the state on that date and not permitted to be used. I believe that the Legislature intended by the proviso to impose a further qualification—that is, that pre-1929 boilers once located in the state, whether before or after December 31, 1929, might not be reintroduced for use in the Commonwealth. The proviso says nothing about the location of pre-1929 boilers on December 31, 1929. It speaks only of removal from the state subsequent thereto. Since the pre-1929 boiler in this case has not been "removed from the Commonwealth subsequent to such applicable date" it is exempted thereby. The majority's construction would permit the use of non-shop tested boilers built prior to 1929 and located in the state at that time and would forbid the use of identical boilers imported after that date, the result which in *Empire Box* was properly found to be unconstitutional.

Judge CRUMLISH, JR. joins in this dissent.

----

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

First, as to the boiler constructed in 1936. Section 4 of the Act of May 2, 1929, P. L. 513, *as amended*, 35 P.S. §1304 (the Boiler Law), provides that a boiler constructed after 1929 and "destined for use" in this Commonwealth must have been inspected during construction in order to be used in this Commonwealth. While this 1936 boiler was admittedly not inspected during construction, it was not then "destined for use" in this Commonwealth. By the majority's own definition, "destined" means "bound for a certain destination." If that definition is here applied, it seems to me that the 1936 boiler, being clearly not "destined for use" in Pennsylvania at the time of its construction, and actually destined at that time for use elsewhere, does

not come within the provisions of Section 4 of the Boiler Law, and could now be used here provided that current inspection standards are met. I do not believe, therefore, that its licensure should have been denied.

As to the boiler constructed in 1927, I join in the dissenting opinion of Judge ROGERS.