Frederic Oknefski, Widower and Administrator of the Estate of Cindy Oknefski, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Louisiana Pacific Corp., Respondents.

Commonwealth of Pennsylvania, LeRoy S. Zimmerman, Attorney General, Intervenor.

Argued October 8, 1981, before Judges MENCER, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*David A. Whitney, Cartwright, Fernan & Whitney,* for petitioner.

*Joseph F. Grochmal, Fried, Kane, Waters & Zuschlag,* for respondent, Louisiana Pacific Corp.

*Michael L. Harvey,* Deputy Attorney General, with him *Allen C. Warshaw* and *Mary Ellen Krober,* Deputy Attorneys General, for intervenor.

OPINION BY JUDGE PALLADINO, December 29, 1981:

Petitioner-widower appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying Petitioner-widower death benefits pursuant to Section 307 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §562.

The facts as found by the referee, and affirmed by the Board, are not in dispute. Petitioner's wife died directly as the result of a work-related incident in the course of her employment. Until the time of her demise, Petitioner's wife was married to and living with Petitioner.

The singular issue on appeal before this Court is whether Section 307 of the Act violates the equal protection clauses of the federal and state constitutions[1] because its eligibility criteria for widowers seeking benefits upon the death of their wives differ from its eligibility criteria for widows seeking benefits upon the death of their husbands.

Section 307 states in pertinent part:

No compensation shall be payable under this section to a widow, unless she was *living with her deceased husband* at the time of his death, *or* was then *actually dependent* upon him *and receiving* from him a *substantial* portion of her *support.* No compensation shall be payable under this section to a widower, unless he be *incapable of self-support* at the time of his wife's death *and* be at such time *dependent* upon her for support. (Emphasis added.)

"[I]n considering the equal protection clause we evaluate the disparity of treatment by the state between classes of individuals whose situations are

---

[1] U.S. CONST. amend. XIV, §1; Pa. CONST. art. III, §32.

arguably indistinguishable.''[2] *McCoy, M.D. v. State Board of Medical Education and Licensure,* 37 Pa. Commonwealth Ct. 530, 537, 391 A.2d 723, 726 (1978). To survive a constitutional challenge, "gender-based discriminations must serve important governmental objectives and . . . the discriminatory means employed must be substantially related to the achievement of those objectives.'' *Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. 142, 150 (1980); *Orr v. Orr,* 440 U.S. 268 (1979); *Leap v. Department of Labor and Industry,* 14 Pa. Commonwealth Ct. 324, 322 A.2d 398 (1974).

Respondent, decedent's employer, argues that the disparate treatment of widows and widowers under Section 307 is substantially related to the important governmental objectives of (1) curing past economic discrimination against women in the job market, which has caused women to be financially dependent upon their husbands and (2) administrative convenience, *i.e.,* the savings in costs and time resulting from presuming the dependency of women rather than requiring case-by-case evaluations of their economic status.

With respect to Respondent-employer's first contention, Section 307 does not act to correct, but rather to perpetuate, discriminations against working women.[3] Under the Act, "[t]he benefits . . . that the work-

[2] The dissimilar treatment under Section 307 of the Act of people similarly situated is most obvious in the case of non-dependent widows compared to non-dependent widowers.

[3] This is an example of "double-edged discrimination." *Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. 142, 152 (1980). Section 307 of the Act not only discriminates against the female wage earner but also against the male surviving spouse. In order to receive compensation for the loss of his wife, a widower, unlike a widow, must sustain a heavy burden of proof which includes proof of his actual dependence on his wife *and* proof of his inability to be self-supportive. Moreover, the husband is disadvantaged because "the prospect of receiving a potential death benefit upon the husband's demise

ing woman can expect to be paid to her spouse in the case of her work-related death are less than those payable to the spouse of the deceased male wage earner." *Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. at 147. That is, a widow who was living with her husband at the time of his death is presumed dependent while no such presumption is afforded a widower who was living with his wife at the time of her death. Moreover, a widower is deprived of benefits unless he is incapable of self-support while a widow does not have to establish her inability to be self-sufficient in order to obtain benefits. Here, as in *Califano v. Goldfarb*, 430 U.S. 199 (1977), "female insureds [receive] less protection for their spouses solely because of their sex." *Id.* at 208; *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975); *Frontiero v. Richardson*, 411 U.S. 677 (1973).

Regarding Respondent's second argument, greater promptness in processing claims would be obtained by paying benefits to all widows and all widowers without requiring proof of dependency in either instance whereas greater cost efficiency would be achieved by paying benefits only to members of either class who could demonstrate actual dependence upon the deceased spouse. *Califano v. Goldfarb; Reed v. Reed,* 404 U.S. 71 (1971).

> The burden . . . is on those defending the discrimination to make out the claimed justification, and this burden is not carried simply by noting that [when the act was passed] the state legislature thought widows to be more in need of prompt help than men or that today 'the substantive difference in economic standing of

---

reduces the wife's need for insurance on his life, whereas the prospect of not receiving a death benefit upon the wife's demise increases the husband's need for insurance on her life." *Id.* at 154 (emphasis in original) (STEVENS, J., concurring).

working men and women justifies the advantage' given to widows. . . . [T]he bare assertion of this argument falls far short of justifying gender-based discrimination on the grounds of administrative convenience.

*Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. at 151 (quoting *Wengler v. Druggists Mutual Insurance Co.,* 583 S.W.2nd 162, 168 (Mo. Supreme Ct. 1979)).

Concluding that Section 307 is unconstitutionally discriminatory, we now consider the possible remedies.

Where a statute is defective because of under-inclusion[4] [as in this case] there exists two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.

*Welsh v. United States,* 398 U.S. 333, 361 (1970) (HARLAN, J., concurring in result).

"In previous cases involving equal protection challenges to underinclusive . . . statutes, [the Supreme Court of the United States] has suggested that extension, rather than nullification, is the proper course." *Califano v. Westcott,* 443 U.S. 76, 89 (1979); *Frontiero.*

Here, the legislative policy underlying Section 307, *i.e.,* protection against the loss of the decedent's income, is evidenced by the fact that benefits payable to the survivor are calculated as a percentage of the deceased wage earner's salary. Section 307 of the Act,

---

[4] Section 307 is underinclusive because *widowers who are capable of self-support are denied death benefits* even though they were actually dependent upon their wives' income while *widows who are capable of self-support receive death benefits* if they can establish that they were living with their husbands at the time of their death or were actually dependent upon their husbands.

77 P.S. §561. Thus, extension of the widow's standard to widowers comports with the remedial purpose of the Act by protecting widowers as well as widows against the loss of a deceased wage earner's income.

Moreover, extension of the widow's standard produces a less disruptive effect on the administration of the Act than invalidation of the Act or, as Respondent urges, application of the more restrictive widower's criteria, because the extension will not result in a termination of benefits to widows who are currently receiving compensation under the less stringent standard. *Westcott.*

Accordingly, we enter the following

ORDER

AND Now, December 29, 1981, the order of the Workmen's Compensation Appeal Board, Docket No. A-79458, is reversed, and this case is hereby remanded to the Board for a computation of death benefits.