# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerard Grimm, on behalf of          :
Katherine A. Grimm, Deceased,     :
                 Petitioner    :
                                :
           v.              :  No. 1982 C.D. 2016
                                :  Argued: November 15, 2017
Workers' Compensation Appeal    :
Board (Federal Express Corporation), :
                 Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge[1]

**OPINION**
**BY JUDGE SIMPSON**            **FILED: January 4, 2018**

This appeal involving a fatal claim petition implicates only benefits for a surviving spouse; there is no dispute as to benefits for surviving children.

In particular, Petitioner Gerard Grimm (Claimant), on behalf of Katherine A. Grimm (Decedent), petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) denial of his fatal claim petition. Claimant raises substantial evidence and capricious disregard challenges to the WCJ's critical findings of fact. In addition, Claimant contends the WCJ erred by misinterpreting the spousal

---

[1] This decision was reached before the conclusion of Judge Cosgrove's service with this Court on December 31, 2017.

dependency requirements in Section 307(7) of Workers' Compensation Act (Act)[2] and the applicable case law construing those provisions. For the reasons that follow, we affirm.

## I. Background

Claimant and Decedent were married in November 1988. They had three children. Claimant and Decedent separated in August or September of 2010. On February 2, 2012, Decedent suffered a heart attack while delivering packages in the course of her employment as a truck driver/delivery person for the Federal Express Corporation (Employer).

In April 2012, Claimant filed a fatal claim petition on behalf of himself as widower/husband and the couple's children as dependents. Reproduced Record (R.R.) at 3a-4a. Employer initially filed an answer denying the material allegations of the petition. R.R. at 5a-7a. However, during the proceedings, Employer acknowledged Decedent's work-related death and her children's entitlement to benefits. In July 2013, the parties executed an agreement for compensation for death (compensation agreement). See R.R. at 61a-63a. Pursuant to the compensation agreement, Employer agreed to pay dependency benefits to Decedent's children in accord with Section 307(1) of the Act, 77 P.S. §561(1). Pursuant to Section 307(7) of the Act, 77 P.S. §561(7), Employer agreed to pay Claimant up to $3,000 for Decedent's burial expenses. R.R. at 63a.

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §561(7).

2

However, the parties were unable to settle the issue of whether Claimant was entitled to dependency benefits as a widower because he had been separated and living apart from Decedent, although they were not divorced. Nonetheless, Claimant maintained he was substantially dependent on Decedent at the time of her death. See WCJ's Op., 6/12/15, Finding of Fact (F.F.) No. 1.

Before the WCJ, Claimant testified on his own behalf and submitted joint tax returns he filed with Decedent and other documentary evidence showing the health insurance benefits Decedent provided to Claimant and the children. Claimant testified that at the time of her death, Decedent resided in the family home with her three children. F.F. No. 2b. The home had no mortgage at the time Claimant and Decedent separated. Id. Decedent paid for the home insurance. Id. Claimant, however, acknowledged that he paid the utilities, which included water, gas and electric. Id. Claimant also paid most of the children's expenses. Id. In particular, Claimant admitted he contributed to Decedent's and the children's monthly expenses, and not the other way around. Id.

Claimant further testified that following his separation from Decedent, he rented a townhouse. F.F. No. 2c. After moving out of the marital residence, Claimant was solely responsible for his rent, utilities and food. Claimant owned a car with no payment. Id. Claimant also paid for his car insurance. Id. Claimant and Decedent continued to have a joint checking account, which Claimant basically used as his personal account. Id. Claimant also acknowledged that Decedent did not provide him with any monetary support or contribute to any of his daily living expenses. Id.

3

Further, Claimant testified that he is self-employed and that health insurance is expensive. F.F. No. 2d. However, Decedent continued to provide her family, including Claimant, with health insurance through Employer, even after their separation. Id.

Claimant also submitted joint income tax returns for himself and Decedent for the years of 2009 through 2013. F.F. No. 3. For the years 2009 and 2010, Claimant and Decedent had negative adjusted gross income because of Claimant's business losses. Id. However, for 2011, the year prior to Decedent's death, Claimant and Decedent had an adjusted gross income of $80,600. Claimant's total wages were $50,527 and Decedent's total wages were $18,690. Id.

In addition, Claimant submitted documentation showing Decedent paid for health insurance coverage through payroll deductions by Employer from November 13, 2010 through January 28, 2012. F.F. No. 4. Id. Employer's health insurance covered not only her children, but also Claimant. Id.

Based on the evidence presented, the WCJ found that Claimant was not living with Decedent and that he was not dependent on her or receiving a substantial portion of support from her at the time of her death. F.F. No. 5a. In reaching this conclusion, the WCJ observed that the only support Decedent provided to Claimant was the health care benefits she obtained through Employer. Id.

The WCJ further found the record established that Claimant provided the majority of support for Decedent's and the children's household. F.F. No. 5a. Claimant continued to pay the utilities for the marital residence, the children's expenses and half of the real estate taxes. Id.

The WCJ also rejected Claimant's argument that his 2009 and 2010 tax returns show that he relied on Decedent for substantial support during those years. F.F. No. 5b. Although their joint tax returns show negative income, they reflect numerous deductions based on Claimant's business losses. Id. Also, Claimant and Decedent's joint tax return for 2011 shows that Claimant's income recovered and that he earned substantially more than Decedent at the time of her death. Id.

Most importantly, the WCJ emphasized that Decedent's payment of her family's health coverage through Employer did not by itself establish that she substantially contributed to Claimant's support. F.F. No. 5c. Rather, the evidence shows Claimant provided substantial support for Decedent and the children. Id.

The WCJ also rejected Claimant's argument that he was living with Decedent for purposes of receiving compensation under Section 307(7) of the Act, 77 P.S. §561(7) ("[n]o compensation shall be payable under this section to a widow[er], unless he was living with his deceased [spouse] at the time of [her] death, or was then actually dependent upon [her] and receiving from [her] a substantial portion of [his] support").[3] F.F. No. 5d. The WCJ reasoned that Section 307(7)'s

_____

[3] Although Section 307(7) of the Act contains different eligibility criteria for widowers, this Court ruled those separate criteria violated the respective equal protection clauses of the United

5

concept of "living with" could not be construed in any way to find that Claimant and Decedent were living together at the time of Decedent's death. Id. Rather, the WCJ found the evidence clearly established that Claimant and Decedent lived in separate residences for over a year-and-a-half at the time of Decedent's death. Id.

Further, although Decedent never obtained a final decree in her divorce action against Claimant, the WCJ found that the evidence did not show that the couple continued in a marital relationship. F.F. No. 5d. To the contrary, Claimant and Decedent clearly lived separate lives. Id. Further, the WCJ found the fact that the couple continued to file joint tax returns of little significance because the joint filing benefited both of them. Id. Therefore, the WCJ determined the record lacked sufficient evidence to establish "that the parties remained in a marital relationship other than in name." Id. Consequently, the WCJ denied Claimant's fatal claim petition.

On appeal, the Board affirmed. The Board observed that the test for establishing dependency for widows and widowers has two prongs. Where the spouses were separated at the time of the decedent's death, in order to be eligible for benefits, the claimant/widower must establish (1) that he was actually dependent upon the decedent, and (2) that he received a substantial portion of support from the decedent. Canton Plumbing and Heating v. Workmen's Comp. Appeal Bd. (Robbins), 582 A.2d 90 (Pa. Cmwlth. 1990). To that end, the Board observed, the

States and Pennsylvania Constitutions. Oknefski v. Workmen's Comp. Appeal Bd. Louisiana Pacific Co., 439 A.2d 846 (Pa. Cmwlth. 1981). Therefore, the presumption of actual dependency in Section 307(7) for spouses "living with" each other applies equally to widows and widowers. Oknefski.

6

issue of dependency "is peculiarly one of fact for the compensation authorities to determine." Urso v. Workmen's Comp. Appeal Bd. (LeRoy), 394 A.2d 1322, 1323 (Pa. Cmwlth. 1978).

Here, the Board ultimately reasoned (with emphasis added):

> After reviewing the evidence, we determine that the WCJ did not err in her analysis of the support Decedent was providing. Initially, we note that Claimant's focus on Decedent's financial contribution to the entire family is misplaced. It is undisputed that Decedent provided health benefits and contributed to expenses for the children. At issue is the dependency of Claimant himself. The only benefit Decedent provided for Claimant was health insurance coverage. This was undoubtedly a valuable benefit. However, Claimant failed to show that he was 'actually dependent' on Decedent in this regard because Claimant did not testify that he could not have afforded health insurance for himself, only that he could not get coverage that was as good for the price Decedent was paying. Further, this case differs from the others dealing with a substantial portion of support in one critical aspect, namely, Claimant was actually providing financial support to Decedent, more so than she was providing a financial benefit to him. Claimant's evidence shows that at the time of Decedent's death, Claimant was solely supporting his own household and was largely supporting Decedent and the children. This is in contrast with cases such as Canton Plumbing and Heating, and Urso, where both wives received money from their husbands, albeit in a small amount, which they used to procure necessities of life, but there was no evidence that the wives provided any money or other financial benefit for their husbands. Given Claimant's financial self-support and substantial amount of support he provided for Decedent, as well as a lack of evidence such as a household accounting to further demonstrate that Decedent provided a substantial proportion of Claimant's living expenses, we determine that Decedent's provisions of health insurance coverage for Claimant, although a 'necessity of life,' does not rise to the level of Claimant being 'actually dependent' and

7

> receiving a 'substantial portion of support' from Decedent as contemplated by the Act.  Therefore, the WCJ did not err in denying the Fatal Claim Petition.

Bd. Op., 11/10 16, at 8-9.  Claimant petitions for review.[4]


## II. Discussion

### A. Legal Separation; Final Divorce Decree

### 1. Argument

We first address Claimant's contention that the WCJ erred in denying his fatal claim petition because the evidence here and the applicable law regarding a surviving spouse's dependency construe the term "living with" in Section 307(7) of the Act liberally.  Am. Mut. Ins. Co. v. Workmen's Comp. Appeal Bd. (Davenport & Natural Marble & Onyx Co.), 530 A.2d 121 (Pa. Cmwlth. 1987).  Thus, even though a married couple may have technically separated, Claimant contends they can be considered as "living together" for purposes of Section 307(7) of the Act.

Further, Claimant argues the WCJ erred in denying his fatal claim petition where the parties were merely legally separated at the time of Decedent's death and where Decedent supplied the entire family with health insurance and assisted with the children's monthly expenses.  Claimant asserts there is no evidence that Decedent ever intended to follow through with the divorce.

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

8

Under Pennsylvania law, Claimant argues, if a widower demonstrates that he is living with the deceased employee at the time of her death, dependency is presumed. White v. Mercer Cty. Poor Dirs., 174 A. 834 (Pa. Super. 1934). In American Mutual, this Court reasoned that the term "living with" in Section 307(7) is to be liberally construed. In that case, the claimant and decedent had a stormy marriage, but the claimant never abandoned the marital relationship. Although the claimant lived apart from her husband for a period of time, she did so because of her employment in New York. At the time of her husband's death, the couple resided together in a home in New Jersey owned by her husband's parents. Consequently, we noted that the claimant and the decedent in American Mutual were in every respect husband and wife.

Here, Claimant points out, he and Decedent were married in November 1988 and lived together for 22 years until Decedent filed for divorce in 2010. At that time, Claimant moved from the marital residence to a rented townhouse. Neither a divorce decree nor any other court orders were issued prior to or immediately after Decedent's death in February 2012. See N.T. at 8; R.R. at 15a.

When Claimant moved out of the family residence, the couple had no written agreement on who would pay certain expenses. The couple owned the home, and there was no mortgage payment. The couple also split the real estate taxes. The couple also maintained a joint checking account. However, Decedent opened up her own checking account. N.T. at 20; R.R. at 27a. In addition, Claimant testified he used the joint account for his personal use. Id. Further, the couple continued to file joint tax returns, including for year 2011, which immediately preceded her death.

9

Based on the facts, Claimant contends the WCJ erred in determining Claimant and Decedent did not continue in a marital relationship after they began living in separate residences. See F.F. No. 5d. Although they now resided separately, Claimant asserts the couple's lives remained intertwined, and at no time did they abandon marital relations. To that end, they never obtained a divorce decree, there were no court orders for support of any kind, and the couple jointly owned the martial residence. Also, Decedent provided health insurance coverage for not only the children, but for Claimant as well.

In sum, Claimant asserts the WCJ should have concluded that he was living with Decedent at the time of her death for purposes of Section 307(7) of the Act. White. Therefore, Claimant argues, the WCJ misinterpreted the "living with" language in Section 307(7) of the Act and erred in denying his fatal claim petition. Am. Mut.

## 2. Analysis

As noted above, the language in Section 307(7) of the Act which provides that no compensation shall be payable to a widow unless she was living with her deceased spouse at the time of his death, applies equally to both widows and widowers despite separate language in the statute pertaining solely to widowers. Oknefski. Further, we recognize that the term "living with" in Section 307(7) of the Act must be liberally construed and that the issue of dependency is peculiarly one of fact to be adjudicated by the WCJ. Am. Mut. (citing Urso).

10

The WCJ here determined that the statutory concept of "living with" in Section 307(7) cannot be construed in any way to find that Claimant and Decedent were living together at the time of Decedent's death. F.F. No. 5d. The WCJ interpreted the facts as establishing that Decedent filed for divorce and that Claimant and Decedent thereafter resided in separate residences until Decedent's death. Id. Although the couple continued to file joint tax returns after their separation, the WCJ noted the joint returns benefitted both of them financially and did not constitute evidence that the parties remained in a marital relationship other than in name. Id.

Given the totality of the circumstances here, we agree with the Board that American Mutual is plainly distinguishable from the present case. In American Mutual, although the claimant endured a stormy marriage, the claimant lived separately from her husband in Pennsylvania because of her employment in New York. At the time of her husband's death, the claimant actually lived with her husband, "in every respect as husband and wife" at a residence in New Jersey owned by her huband's parents. Am. Mut., 530 A.2d at 127.

In contrast here, after 22 years of marriage, Decedent instituted a court action for divorce. At that time, Claimant left the marital residence and rented a separate townhouse. Decedent did not provide any support for Claimant's residential expenses. To the contrary, Claimant continued to provide support for Decedent and the children so they could remain in the marital residence. Although the couple maintained a joint checking account, Decedent opened up her own checking account and did not use the joint account. Finally, although the couple never obtained a final divorce decree, Claimant and Decedent no longer lived with

11

each other as husband and wife. Consequently, we must conclude that the WCJ's findings, that Claimant and Decedent no longer lived with each other in a marital relationship at the time of Decedent's death, are supported by substantial evidence and are in accord with the applicable law. Canton Plumbing; Am. Mut. Therefore, Claimant was not entitled to the presumption of actual dependency under Section 307(7) of the Act for spouses living together at the time of the decedent's death. Am. Mut.

## B. Health Insurance Coverage

### 1. Argument

Claimant also contends the WCJ erred by failing to take into account Decedent's contribution of supplying health insurance benefits for her family and Claimant. Thus, Claimant asserts, the WCJ failed to meaningfully analyze the effect of Decedent's contribution of supplying health care benefits, which in the year preceding her death, amounted to 25% of the family's overall monthly expenses.

Before the WCJ, Claimant testified that Decedent took care of the family's health insurance and that it was the main benefit he received. WCJ Hr'g, 6/19/12, Notes of Testimony (N.T.), at 12; R.R. at 19a. Claimant further stated that after Decedent's death, Employer permitted him to purchase health care coverage at the COBRA[5] rate of $187.00 per month for approximately one year. Id. Claimant added that without Decedent's assistance, he would not have been able to have such coverage for the remainder of the 2012 year. N.T. at 13; R.R. at 20a.

---

[5] The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. §§1161-1169, provided a program for an employee to continue to participate in a group health care plans for a period of time after the employee left his or her employment.

Therefore, Claimant argues, even assuming Claimant and Decedent were not "living together" for purposes of Section 307(7) of the Act at the time of Decedent's death, Claimant was nevertheless dependent upon her and received a substantial portion of support from her. Claimant argues that this Court, in Canton Plumbing, interpreted the statutory term "substantial portion of support," to encompass as little as the provision of money from one spouse to another to buy groceries and cigarettes. Based on this liberal standard, Claimant asserts Decedent's provision of health care benefits to an entire family constitutes a "substantial portion of support" under Section 307(7) of the Act. Therefore, Claimant argues, he was clearly dependent upon Decedent prior to her death. Canton Plumbing. As such, Claimant summarizes, the WCJ had no basis to deny his fatal claim petition where the evidence overwhelmingly established his dependency on Decedent in the year prior to her death.

## 2. Analysis

Initially, we recognize that the WCJ, as the ultimate fact-finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). As such, the WCJ may accept or reject the testimony of a witness, including an expert witness, in whole or in part. Id.

Further, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014). To that end, we examine the

13

record in its entirety to see if it contains evidence a reasonable person would find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the WCJ's findings must be upheld. Id. In addition, we must view the evidence in the light most favorable to the prevailing party and give that party the benefit of all inferences reasonably deducible from the evidence. Id.

Moreover, a capricious disregard of the evidence occurs only when the WCJ deliberately or baselessly disregards apparently trustworthy evidence. Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137 (Pa. Cmwlth. 2004). Where there is substantial evidence to support a WCJ's findings, and those findings support the WCJ's legal conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard. Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478 (Pa. 2002). Further, where the WCJ discusses the evidence in question, but rejects it as less credible or assigns it less evidentiary weight than other evidence, the WCJ's determination does not constitute a capricious disregard of that evidence. Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.), 114 A.3d 464 (Pa. Cmwlth. 2015).

A determination of dependency is a question of fact within the province of the compensation authorities. Urso. Here, the WCJ explicitly found that Decedent's payment of the family health coverage did not establish that she substantially contributed to Claimant's support. F.F. No. 5c. To the contrary, the WCJ found that Claimant provided a substantial portion of Decedent's support. Id.

14

On appeal, the Board similarly determined that the only benefit Decedent provided to Claimant was health insurance coverage. Bd. Op. at 8. Notably, the Board observed, Claimant testified that he could not find similar health insurance coverage; he did not testify that he could not afford health insurance for himself. See Bd. Op. at 8; N.T. at 12-13; R.R. at 19a-20a. Therefore, the Board reasoned Claimant did not prove he was actually dependent on Decedent for anything.

On review, we see no error or abuse of discretion in the WCJ's determination that Decedent's payment for health care coverage for her family, including Claimant, did not establish that Decedent provided a substantial portion of Claimant's support. In Canton Plumbing, the claimant, a widow who separated from her husband approximately four months prior to his death, testified she began living with an elderly couple who provided her with meals and lodging in exchange for her services as a housekeeper. In addition, the claimant received up to $40 per week from her husband. The claimant used this money to buy cigarettes, personal items, and some groceries. However, the claimant also testified the elderly couple provided all of her meals. In Canton Plumbing, we vacated the Board's order and remanded for specific findings as to the amount of money the claimant received from her husband and whether she used that money for the necessities of life, and whether it was more difficult for the claimant to meet her expenses after her husband's death.

Similarly, in Urso, the claimant, separated from her husband for a period of 10 months, testified she received $20 per week, or $80 per month, from her husband at the time of his death, which she used for food. Although the claimant

15

worked at a low paying job and also received nominal public assistance for her son, the workers' compensation referee found the claimant totally dependent on her husband at that time of his death.

Canton Plumbing and Urso are readily distinguishable from the present case. Here, the WCJ found that Decedent received a substantial portion from Claimant for her daily needs, and not the other way around. In particular, Claimant testified he continued to pay the utilities for the marital residence, half the real estate taxes for that residence and most of the children's expenses. F.F. No. 5a; N.T. at 14, 20; R.R. at 21a, 27a. Therefore, even assuming Decedent's payment of the health insurance premiums for the year prior to death amounted to 25% of the family's overall monthly expenses, a factual assertion which the record does not clearly reflect, Claimant nevertheless provided a substantial portion of Decedent's overall support, which made it possible for Decedent and the children to remain in the marital residence.

For these reasons, we must reject Claimant's argument that the WCJ capriciously disregarded or failed to properly take into account evidence of Decedent's contribution of his health care coverage. In determining that Decedent did not provide a substantial portion of Claimant's support, the WCJ basically reached the conclusion that Claimant was not actually dependent on Decedent and therefore ineligible for widower's compensation under Section 307(7) of the Act. Nevertheless, the WCJ distinctly considered Decedent's contribution of health insurance. However, the WCJ observed that the health insurance benefits alone failed to establish that Decedent substantially contributed to Claimant's support.

16

F.F. No. 5a. Where, as here, the WCJ discusses the evidence in question, but assigns it less weight than conflicting evidence showing that Claimant actually provided a substantial portion of Decedent's support, the WCJ did not capriciously disregard Decedent's health insurance contributions in determining she did not provide a substantial portion of Claimant's support. Reed.

### C. Tax Returns; Business Losses

### 1. Argument

Claimant further contends the WCJ erroneously rejected or capriciously disregarded competent evidence in the nature of Decedent's tax returns for the years 2009 through 2013, where the WCJ failed to acknowledge that there was no contradictory evidence. Although they were not living together at the time of Decedent's death, Claimant argues the requirement of substantial support has been construed liberally and even a small amount of support may constitute a "substantial portion of support" as contemplated by Section 307(7) of the Act. Canton Plumbing; Urso.

Claimant further asserts the WCJ misapplied the rationale in Canton Plumbing and disregarded substantial evidence showing Claimant lost his warehouse and trucking businesses prior to Decedent's death. As a result, he became dependent upon Decedent for a substantial portion of support.

In particular, Claimant maintains uncontroverted evidence shows that he and Decedent were responsible for a five-person household, including two children in college and one in high school. Moreover, Claimant testified that during

17

the recent recession beginning in 2008, his trucking and warehousing businesses sustained losses. N.T. at 14; R.R. at 21a. Eventually, Claimant closed both of his businesses and became a commission sales agent for certain companies. Id.

In addition, Claimant maintains his joint tax returns for the years 2009 through 2012 establish that following the loss of his businesses he became substantially dependent upon Decedent for support. In 2009, the couple's wages totaled $50,575, of which Decedent earned $22,061. However, based on deductions, the couple reported a negative adjusted gross income for 2009 of $47,554. Therefore, Decedent's income for that year represented 44% of the family's income.

For the year 2010, the couple again reported a negative adjusted gross income of $47,990. The couple's earned wages for that year totaled $25,773. Although the tax return does not indicate any income for Decedent, Claimant asserts she worked for Employer for a month in December 2010. During that month, Employer paid $1,021.46 in medical insurance and $67.04 in dental insurance. Decedent also had payroll deductions of $304.26 for the year 2010.

For the year 2011, the couple reported a positive adjusted gross income of $80,602. Claimant reported a business income of $50,527. Decedent earned $18,699 from Employer. During 2011, Decedent contributed $5,096.21 in payroll deductions for the family's health and dental benefits. In addition, Employer paid $12,891.60 in medical benefits and $794.76 in dental benefits. When combined, Employer's medical benefits of $13,686.36 and Decedent's payroll deductions of $5,096.21 equal $18,782, which represents approximately 23% of the couple's gross

18

income.  In addition, Decedent's $18,699 wages in 2011 represents another 23% of the couple's adjusted gross income.  Therefore, Decedent's wages, combined with Employer's payment of the family's medical and dental expenses, totaled more than $32,385.36, which represents approximately 40% of the couple's adjusted gross income.

For the year 2012, the year of Decedent's death, she earned $1,162 in wages, and Claimant earned $8,268 in business income.  The couple reported an adjusted gross income of $38,060, which included income from pension and annuity payments.  In addition, Employer provided medical, dental and vision benefits in the amount of $970.46, and Claimant contributed payroll deductions toward these benefits in the amount of $376.03.

Further, Claimant obtained COBRA benefits through Employer for his family for $184 per month for the year 2012.  Thereafter, Claimant would have to acquire health benefits on his own.  For the year 2013, the year following Decedent's death, Claimant filed a single return with an adjusted gross income of $27,935.

Although the exact portion of Decedent's support of Claimant varied from year to year, Claimant maintains Decedent provided between 25% and 40% of the family's income in the years just prior to her death.  Claimant argues Decedent's contribution amounts to a "substantial portion" of his support for purposes of Section 307(7) of the Act.  Claimant further asserts that without Decedent's health insurance coverage, he would not have been able to afford such coverage on his own without

19

Employer's help. Therefore, Claimant argues, the evidence clearly shows he received a substantial portion of support from Decedent.

Summarizing, Claimant again cites Canton Plumbing and Urso for the proposition that a small amount of money provided by one spouse to another for the necessities of life may constitute a "substantial portion of support" for purposes of finding a surviving spouse "actually dependent" and thereby entitled to compensation under Section 307(7) of the Act. Here, Claimant asserts the record shows Decedent was responsible for at least a portion of the children's expenses and 25-40% of the family's overall income during the period when he lost his businesses. Therefore, Claimant argues the WCJ erred by disregarding this uncontroverted evidence of actual dependency and denying his fatal claim petition.

## 2. Analysis

In Finding of Fact No. 5b, the WCJ stated that she did not find any merit in Claimant's argument that the couple's joint tax returns for the years 2009 and 2010 established that Claimant relied on Decedent for support during these years. Although these returns showed a negative adjusted gross income, these figures were based on numerous deductions resulting from Claimant's business losses. By 2011, the couple's adjusted gross income exceeded $80,000, with more than $50,000 coming from Claimant and $18,699 from Decedent.

As reflected by the 2011 tax return, Claimant earned significantly more than Decedent during the year prior to her death. This evidence supports the WCJ's findings that Claimant provided the majority of support for Decedent and her

20

children in 2011. Further, although Decedent continued to provide the family with health insurance coverage through Employer after the separation, Claimant improperly focused on Decedent's contribution to the entire family rather than the amount of support Decedent actually provided to him. As noted above, Claimant and Employer entered into a compensation agreement for the children. Pursuant to Section 307(1)(a) and (b) of the Act, 77 P.S. §561(1)(a) and (b), Employer agreed to pay dependency compensation for the children while they remained enrolled in college. R.R. at 63a.

Therefore, only Claimant's dependency remained at issue. In order to be "actually dependent" under Section 307(7) of the Act, Claimant needed to establish that he relied on Decedent for a substantial portion of his support. Canton Plumbing. Other than health insurance coverage, which can be considered a necessity, Decedent did not provide Claimant with any financial support. To the contrary, Claimant testified that when he moved out, he still paid for the marital residence's utilities and most of the children's expenses. N.T. at 11; R.R. at 18a. Claimant and Decedent shared the property taxes on the marital residence. Id. Claimant also paid the rent and utilities on his rented townhouse. N.T. at 18-20; R.R. at 25a-27a. Decedent did not contribute to Claimant's residential expenses. N.T. at 20; R.R. at 27a. Further, Claimant's 2011 tax returns show that prior to Decedent's death in 2012, Claimant's income recovered following his earlier business losses, and he earned significantly more than Decedent.

In sum, Decedent provided the family, including Claimant, with health insurance coverage. Although Claimant characterizes the medical, dental and vision

benefits received, and the payroll deductions to pay for them, as part of the family income, Claimant failed to establish what portion of the family's health benefits he received. We also note that Claimant testified he would not have been able to obtain COBRA coverage for himself and the children at $187 per month for the year 2012 without Decedent's assistance. N.T. at 12-13; R.R. at 19a-20a. However, as discussed above, Claimant failed to establish he would have been actually dependent on Decedent for his own health insurance coverage. Rather, Claimant testified: "Being self-employed, I couldn't find a cheaper coverage then what, you know, as good of coverage that she had for the price." N.T. at 12; R.R. at 19a.

Therefore, we reject Claimant's contention that the WCJ arbitrarily or capriciously disregarded the couple's joint tax returns for the years 2009-2012 or Claimant's business losses. In short, Claimant failed to establish his <u>actual dependency</u> upon Decedent for his own health insurance coverage or for any other means of support. <u>Canton Plumbing</u>; <u>Urso</u>.

### III. Conclusion

For the above reasons, we discern no error or abuse of discretion in the WCJ's decision and order denying Claimant's fatal claim petition. Accordingly, we affirm the Board's order.

_____
ROBERT SIMPSON, Judge

Judge Cosgrove dissents.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerard Grimm, on behalf of     :
Katherine A. Grimm, Deceased,   :
       Petitioner  :
           :
    v.       : No. 1982 C.D. 2016
           :
Workers' Compensation Appeal  :
Board (Federal Express Corporation), :
       Respondent :

# **O R D E R**

   **AND NOW**, this 4th day of January, 2018, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

              _____
              ROBERT SIMPSON, Judge