# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Walton,                          :
                        Petitioner       :
                                         :
            v.                           :   No. 75 C.D. 2021
                                         :   Submitted: July 23, 2021
Iddings Brothers LLC                     :
(Workers' Compensation Appeal            :
Board),                                  :
                        Respondent       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: October 29, 2021

Stephanie Mesen (Claimant), widow of Timothy Walton (Decedent), petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied her petition for fatal claim benefits. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant failed to prove she was dependent on Decedent for financial support prior to his death as required by Section 307 of the Workers' Compensation Act (Act).[1] On appeal, Claimant contends that the Board erred because her evidence proved dependency under a broad reading of marital dependency, which includes the debts that were shared by Claimant and Decedent. Discerning no merit to Claimant's arguments, we affirm the Board.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §562.

Claimant and Decedent were married on December 15, 2014, and separated in 2017. In September of 2018, Claimant filed for divorce. On September 26, 2018, while working as a roofer for Iddings Brothers, LLC (Employer), Decedent fell from a roof and sustained fatal injuries.

On October 24, 2018, Claimant filed a fatal claim petition. In response, Employer agreed that Decedent's death was work-related and paid his funeral expenses; however, Employer challenged Claimant's claim for death benefits because she had not been living with Decedent when he died. The petition was assigned to a WCJ, who conducted multiple hearings.

At the first hearing on December 12, 2018, Claimant testified that she and Decedent were married on December 15, 2014. They lived in Florida in a one-bedroom apartment for a year and then moved in with her mother. Regarding their finances, Claimant explained that they had two joint bank accounts. They bought a car together, which they both used, and were jointly responsible for making the monthly loan payments. Claimant and Decedent filed their federal tax returns jointly in 2014 and 2015. In 2016, upon advice of their accountant, they filed their federal tax returns separately.

Claimant testified that in May of 2017, Decedent decided to move back to Pennsylvania, where his family lived. In Pennsylvania, Decedent worked at Harley Davidson, until he was laid off. He was then hired by Employer. During this time, Claimant was enrolled in a cosmetology program in Florida and lived with her mother. Claimant stated that she intended to move to Pennsylvania after she completed the cosmetology program. While living apart, the couple maintained separate bank accounts. However, Claimant stated Decedent gave her money every month, usually through Cash App, to help her with her food, cell phone and health

insurance costs. Additionally, Claimant testified that she would "help[] [Decedent] with extra money," such as, paying his student loan. Notes of Testimony (N.T.), 12/12/2018, at 32; Reproduced Record at 115a (R.R. __).

Claimant testified that in September of 2018, she filed for divorce from Decedent because of conflicts with his family. However, after talking with Decedent, they agreed not to divorce. The divorce petition was not served on Decedent.

On cross-examination, Claimant acknowledged that she did not pay rent to her mother and that prior to moving to Pennsylvania, Decedent lived with his brother in California. The last time she and Decedent lived together was in 2016. Claimant also acknowledged that on the family law financial affidavit (Financial Affidavit) attached to her divorce petition, she listed her monthly income as $520, working as a hair stylist assistant. She agreed that the Financial Affidavit did not list any payments from Decedent and, further, that the debts listed thereon were identified as hers alone.

At a second hearing before the WCJ on March 27, 2019, Claimant provided additional testimony. She explained that while she was attending cosmetology school, she was not able to work. Claimant testified that Decedent worked for LDS United, Inc. (LDS), an interior renovation company owned by her mother. She stated that, in late 2017, Decedent told her that "he wanted [her] to have the money that he was making at LDS" to help her while in school. N.T., 3/27/2019, at 13; R.R. 15a. Decedent's monthly compensation was $1,750, but he could earn a bonus between $550 and $2,800. He received his compensation in cash, and Claimant signed a receipt for Decedent's compensation from LDS. When asked

why she did not disclose this arrangement at the first hearing, Claimant testified that her previous attorney decided not to bring it up.

On cross-examination, Claimant agreed that she testified at the first hearing her payments from Decedent were made via Cash App. She admitted that she was not able to provide any documentation showing any of the transfers she received from Decedent through Cash App.

When shown a copy of Decedent's bank account records, which indicated one $40 payment to Claimant on July 2, 2018, Claimant responded that Decedent was already providing for her "with [the] cash money that he was making" with LDS so "he didn't have to – you know, send [her] any – any more money than what he was already giving [her]." N.T., 3/27/2019, at 27-28; R.R. 29a-30a. Claimant acknowledged that the LDS income was not listed on the Financial Affidavit submitted with her divorce petition, explaining that her attorney "filled [the Financial Affidavit] out for [her]." N.T., 3/27/2019, at 32; R.R. 34a.

Finally, Claimant stated that she was unaware that Decedent had been receiving unemployment compensation benefits prior to taking the job with Employer. She agreed that Decedent would have been collecting unemployment compensation benefits during the time that he was working for LDS.

Lillian Vaughn Mesen, Claimant's mother, testified. Mesen owns LDS, which uses independent contractors to do renovations and painting. Mesen testified that, in 2016, Decedent signed an independent contractor agreement with LDS; he worked on several jobs for LDS before moving to California. Initially, LDS paid Decedent compensation of $1,550 a month by check. In 2017, Decedent signed an addendum to his independent contractor agreement with LDS providing that, effective October 1, 2017, his compensation would be paid in cash and was assigned

4

to Claimant. Mesen testified that Decedent's work consisted of soliciting contracts for LDS and reviewing the work of subcontractors, which he did by phone or email. She did not have a record of his emails in 2017 or 2018 because Decedent "would send them directly[]" to the contractors. N.T., 3/27/2019, at 67; R.R. 69a. When Decedent was living in California, he worked on a project in San Diego. LDS did not have any projects in Pennsylvania.

On cross-examination, Mesen explained that her bank records did not show cash withdrawals in the amount of $1,550 because she took out an additional $100 or $150, for her personal use. Mesen testified that she prepared the receipts that Claimant signed.

A final hearing was held on June 10, 2019, at which Employer presented the testimony of Terrence Walton, Decedent's father, and Kevin Iddings, Employer's president. Walton testified that his son worked 40 hours a week, plus overtime, for Employer. Outside of work, his son spent time with his girlfriend. Walton testified that Decedent was struggling to pay his bills after he lost his job with Harley Davidson, in spite of his unemployment benefits. There were several times he extended loans to Decedent. Walton testified that he was not aware that Decedent provided any financial support to Claimant in the year prior to his death. Walton testified that Decedent electronically sent Claimant the $40 he owed her and $200 for the divorce paperwork.

Walton testified that Decedent went to California to do a job for LDS, after which he stopped working for LDS. He stayed in California for a while, moving in with his brother and working as an exterminator. According to Walton, after Decedent moved to Pennsylvania, he never mentioned that he was working for LDS and did not have a computer.

5

On cross-examination, Walton testified that Decedent lived with his grandmother in Pennsylvania to help her out. Decedent paid his grandmother about $400 a month in rent. He also spent money on gaming and gaming activities.

Iddings testified that Employer provides exterior home improvements including roofing, siding, windows and doors. Decedent was hired as a full-time employee in the summer of 2018 and worked "upwards of 50-plus hours" a week. N.T., 6/10/2019, at 53; R.R. 224a. On his job application and W-4 IRS form, Decedent identified his status as single. Iddings testified that Decedent did not have a second job. Further, Decedent told him that his employment with LDS ended in May of 2017. On cross-examination, Iddings confirmed that Employer does not have a policy prohibiting an employee from having a second job.

The WCJ denied Claimant's fatal claim petition for the stated reason that Claimant failed to prove that she was financially dependent upon Decedent or received a substantial portion of her support from Decedent. The WCJ did not find any of Claimant's testimony credible, based upon her demeanor and the conflicts in her statements. For example, Claimant testified that Decedent made payments to her through Cash App. A second hearing was held to allow Claimant to produce documentary evidence of these payments, but Claimant's evidence did not show regular cash payments from Decedent. The WCJ rejected Claimant's claim, raised for the first time at the second hearing, that she received regular cash payments of $1,750 a month from Decedent, *i.e.*, his compensation from LDS. First, the receipts for these payments signed by Claimant showed $1,550 a month. Second, the claim was contradicted by Claimant's monthly income of $520 as reported on the Financial Affidavit.

6

The WCJ found Mesen's testimony that Decedent worked remotely for LDS and was paid $1,550 per month while he was working full-time in Pennsylvania "bizarre, farfetched and not believable." WCJ Decision, 4/9/2020, at 26; Finding of Fact No. 30(a); R.R. 523a. Mesen could not produce a single email or text message to or from Decedent to show that he was working remotely for LDS. Neither could Mesen produce a bank statement showing the deductions of $1,550.

The WCJ credited the testimony of Iddings and Decedent's father, noting that if Decedent had been working remotely for LDS, Decedent would have told his father. However, Decedent said nothing about working for LDS.

Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then petitioned for this Court's review.

On appeal,[2] Claimant argues that the Board erred in affirming the WCJ's decision that she was not dependent on Decedent at the time of his death. Claimant explains that she was a student with a negative cash flow; accordingly, any support from Decedent, no matter how minimal, would have been substantial. Further, she and Decedent were tied together financially; they had shared debt and filed their federal taxes jointly. She contends her evidence demonstrated dependency under Section 307 of the Act.

We begin with a review of the applicable law. Section 307 of the Act states, in pertinent part, as follows:

> *No compensation shall be payable* under this section to a widow, unless she was living with her deceased husband at the time of

---

[2] This Court's review determines whether findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Grimm on Behalf of Grimm v. Workers' Compensation Appeal Board (Federal Express Corporation)*, 176 A.3d 1045, 1051 n.4 (Pa. Cmwlth. 2018) (*Grimm*).

7

his death, *or was then actually dependent upon him and receiving from him a substantial portion of her support*.

77 P.S. §562 (emphasis added). Because Claimant and Decedent were not living together, "the surviving spouse must prove not only dependency but that [the] decedent provided a substantial portion of her support." *Lohr v. Workmen's Compensation Appeal Board (Hofmann Industries, Inc.)*, 568 A.2d 1332, 1333 (Pa. Cmwlth. 1989). Actual dependency must affirmatively appear in the record as a fact. *Walzer v. Workmen's Compensation Appeal Board (Globe Security, Inc.)*, 451 A.2d 799 (Pa. Cmwlth. 1982). "Whether [a] claimant was actually dependent upon [a] decedent and was receiving from him a substantial portion of her support is a question for the factfinder." *Edwards v. Workmen's Compensation Appeal Board*, 424 A.2d 616, 618 (Pa. Cmwlth. 1981). It is the claimant's burden to prove all the elements necessary to support an award of a fatal claim benefit.

In determining the factual question of dependency, the WCJ has exclusive province over questions of credibility and evidentiary weight and is free to accept or reject the testimony of any witness, in whole or in part. *General Electric Company v. Workmen's Compensation Appeal Board (Valsamaki),* 593 A.2d 921 (Pa. Cmwlth. 1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262 (Pa. Cmwlth. 1995). This Court has held that "even a small amount of support, if used to provide the necessities of life, can constitute a substantial portion of support." *Canton Plumbing and Heating v. Workmen's Compensation Appeal Board (Robbins)*, 582 A.2d 90, 91 (Pa. Cmwlth. 1990).

8

With these principles in mind, we turn to Claimant's appeal. Essentially, Claimant argues that Section 307 of the Act should be broadly construed and, thus, her evidence demonstrated dependency.

Claimant argues that as a student with a negative cash flow, any support from Decedent would have been substantial. She explains that the $1,639.74 she withdrew from Decedent's account had a significant impact on her finances. However, she withdrew this money *after* Decedent's death. R.R. 447a, 449a. That Claimant is Decedent's heir is irrelevant to her alleged dependency upon Decedent during his lifetime. Claimant notes also that Decedent's bank records show two payments made to an account at Wells Fargo, where she had an account. The WCJ rejected Claimant's suggestion that the payments went to Claimant because the last four digits of her Wells Fargo account did not match the account to which the payments were made. The WCJ likewise found that Claimant did not show that Decedent's payments to a Capital One account went to Claimant.

The WCJ did not credit the testimony of either Claimant or her mother but did credit the testimony of Employer's witnesses that Decedent was not in a position, financially, to support Claimant and did not do so. This credited testimony also established that Decedent did not have time to hold a second job and never mentioned his remote work for LDS, which would be difficult without a computer. Likewise, the WCJ refused to infer dependency from the joint federal tax return filed in 2017, on which a $1,500 education credit was claimed, because Claimant did not list a student loan as a joint liability on the Financial Affidavit. Rather, it listed all debts as "nonmarital." R.R. 303a.

It may be that a broad construction of dependency would include irregular payments to a spouse made to cover the decedent's obligation for a marital

debt. However, the Court need not reach this legal question because the WCJ rejected Claimant's evidence. The WCJ's determinations on credibility and weight to be assigned the evidence are binding on appeal. *See Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company LLC)*, 252 A.3d 1169, 1178 (Pa. Cmwlth. 2021).

The WCJ concluded that Claimant did not prove that Decedent supported Claimant during their separation. We discern no error in this conclusion. The WCJ rejected Claimant's evidence that she received any significant financial support from Decedent during their separation. Absent credited evidence of dependency, the WCJ properly denied Claimant's petition for fatal claim benefits.

Accordingly, for these reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Walton,                         :
                    Petitioner          :
                                        :
        v.                              :        No. 75 C.D. 2021
                                        :
Iddings Brothers LLC                    :
(Workers' Compensation Appeal           :
Board),                                 :
                    Respondent          :

## **O R D E R**

AND NOW, this 29th day of October, 2021, the adjudication of the Workers' Compensation Appeal Board dated January 7, 2021, in the above matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita